**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| VICTOR LUIS ANGELES ZAMORANO, *Petitioner,* <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 19-72893 <br><br> Agency No. A207-281-621 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 13, 2021
Pasadena, California

Filed June 25, 2021

Before: Milan D. Smith, Jr. and Sandra S. Ikuta, Circuit
Judges, and Kathryn H. Vratil,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Kathryn H. Vratil, United States District Judge for
the District of Kansas, sitting by designation.

## SUMMARY[**]

### Immigration

Granting in part, denying in part, and dismissing in part Victor Luis Angeles Zamorano's petition for review of a decision of the Board of Immigration Appeals dismissing his appeal of an immigration judge's denial of voluntary departure, and remanding, the panel held that the IJ erred by failing to evaluate the factors weighing in favor of granting Zamorano voluntary departure.

As an initial matter, the panel noted that although it lacked jurisdiction to reweigh the agency's exercise of discretion in denying voluntary departure, it did have jurisdiction to review constitutional claims or questions of law in the denial of such relief, including whether the Board and IJ failed to consider the appropriate factors or relied on improper evidence. The panel concluded that there was no indication that the IJ implicitly considered any favorable factors in making its discretionary voluntary departure determination. The panel therefore remanded for further proceedings.

The panel rejected Zamorano's argument that the IJ violated 8 C.F.R. § 1240.11 by failing to advise him that he could apply for asylum and withholding of removal, by failing to inform him of his apparent eligibility to apply for other immigration benefits, including U nonimmigrant status, and by failing to develop the record as to these claims. The

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel explained that the duty to advise an alien of apparent eligibility to apply for benefits under Title 8, Chapter V of the Code of Federal Regulations, is triggered whenever the facts before the IJ raise a "reasonable possibility that the petitioner may be eligible" for such relief, and that the failure to advise can be excused when the petitioner's eligibility for relief is not "plausible."

The panel concluded that the IJ's duty to advise Zamorano about his apparent eligibility for asylum and related relief was not triggered, where Zamorano stated that his only fear related to starting a new life in a new country. The panel also held that the IJ did not violate his duty under § 1240.11(a)(2) by failing to advise Zamorano of his apparent eligibility for adjustment of status through U nonimmigrant status, because § 1240.11(a)(2) applies only to benefits under Chapter V, and U nonimmigrant status is governed by Chapter I.

Because Zamorano failed to exhaust his claim regarding the IJ's duty to advise him of his apparent eligibility for Deferred Action for Childhood Arrivals (DACA) relief, and the claim involved a procedural challenge, rather than a constitutional challenge, the panel concluded that it lacked jurisdiction to consider it. The panel rejected Zamorano's argument that exhaustion should be excused by analogy to this court's exception to the exhaustion requirement for collateral challenges to underlying removal orders in the context of 8 U.S.C. § 1326. As an initial matter, the panel observed that the Supreme Court's decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), cast doubt on the continued vitality of the exhaustion excusal rule under § 1326(d). The panel wrote that it need not resolve the effect of *Palomar-Santiago* in the § 1326(d) context, because the

judge-made exception to §1326(d)(1) does not apply to the jurisdictional exhaustion requirement governing final orders of removal under 8 U.S.C. § 1252(d)(1).

Turning to Zamorano's statutory and constitutional claims, the panel held that the IJ did not violate his duty to sufficiently explore for all facts relevant to asylum, withholding of removal, and U nonimmigrant status, and to inform Zamorano of what evidence he needed to establish these claims. The panel explained that the IJ asked pertinent questions directed to determining whether Zamorano was eligible for asylum and withholding of removal, but once Zamorano testified that the only reason he feared returning to Mexico was that he didn't "know how to start a life in a new country," there was nothing left for the IJ to do, because Zamorano's own testimony established there was no plausible basis for relief.

Likewise, the panel explained that Zamorano did not indicate he was seeking possible U nonimmigrant status and nothing in the proceedings would have prompted the IJ to develop more facts on this issue. Moreover, the panel noted that any error in failing to ask additional probing questions concerning potential U nonimmigrant status was harmless, because neither the Board nor IJs have authority over U visa petitions, and no action of the IJ prevented Zamorano from petitioning for such status before United States Citizenship and Immigration Services, with whom sole authority rests.

The panel held that Zamorano failed to establish prejudice from the Board's failure to address his argument on appeal that he was a victim of domestic violence or was eligible for U nonimmigrant relief through his mother, because he never hinted to the IJ that he was also a victim of domestic violence

or was seeking U nonimmigrant status. The panel further noted that the Board may properly refuse to address arguments raised for the first time on appeal.

## COUNSEL

Joseph V. Bui (argued) and Robert A. Olson, Greines Martin Stein & Richland LLP, Los Angeles, California, for Petitioner.

Andrew Oliveria (argued), Trial Attorney; Justin Markel, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

IKUTA, Circuit Judge:

Victor Luis Angeles Zamorano, a native and citizen of Mexico, seeks review of a decision by the Board of Immigration Appeals (BIA) dismissing his appeal from a decision of the immigration judge (IJ) that denied his application for voluntary departure. Because the IJ failed to evaluate the factors weighing in favor of granting Zamorano voluntary departure, we grant the petition and remand to the BIA. We otherwise reject Zamorano's arguments that the agency erred in failing to develop other bases for relief.

## I

## A

In May 2019, Zamorano was served with a notice to appear (NTA), which charged him as removable based on his presence in the United States without admission or parole.

At the initial removal proceeding, the IJ explained to Zamorano that "the purpose of these proceedings is to determine whether you should be removed from or allowed to remain in the United States." The IJ informed Zamorano that he had the right to be represented by an attorney of his choice, at no expense to the government, and indicated that Zamorano had been provided an appeal rights form and a legal aid list of local individuals and organizations. The IJ further explained that "[i]f you do not find an attorney or choose not to have an attorney, then you're required to represent yourself, plead to the allegations and charges against you, as well as prepare any potential applications for relief." Finally, the IJ informed Zamorano that if he did not have an attorney at the next hearing, he should come to the hearing prepared to represent himself.

At his third hearing, after Zamorano did not obtain an attorney despite two continuances, Zamorano stated that he was ready to proceed and to represent himself. The IJ then advised Zamorano of his rights in addition to his right to have an attorney. The IJ explained that he had "the right to present documents or testimony to support your case"; "the right to object to Government evidence and to question witnesses they present"; and "the right to appeal any decision" that the IJ made in his case to the BIA "within 30 days of that decision." Zamorano stated that he understood those rights.

The IJ proceeded through the allegations in the NTA. Zamorano admitted that he was not a citizen or national of the United States, was a native and citizen of Mexico, and entered the United States illegally "at an unknown place on an unknown date." Zamorano also acknowledged that he could be removed based on these allegations.

The IJ then turned to a series of questions regarding potential bases for relief. The IJ asked when Zamorano first entered the United States. Zamorano responded that he entered around the year 2000 as a third grader. The IJ then asked whether Zamorano had ever left the United States, and Zamorano explained that he had not.

The IJ then turned to questions regarding whether Zamorano had relatives in the United States who might assist him in obtaining relief such as cancellation of removal or adjustment of status. He asked whether Zamorano was married, whether Zamorano had children, and whether Zamorano had parents or grandparents in the United States with lawful status. Zamorano responded that he was not married and that he had no children.[1] He also responded that neither his parents nor his grandparents had lawful status, but he noted that his mother was "processing her residency" in the United States. The IJ inquired how Zamorano's mother was pursuing residency, and Zamorano responded that she had "a case of domestic violence." The IJ followed up, "So

---

[1] Later in the hearing, Zamorano mentioned a fiancee who has "not, you know, had a decision on her behalf," but mused that, "[i]f we could somehow arrange a marriage, but, you know, that's, that's all on her, so I'm not willing to submit you know, an application yet."

she's seeking a U-visa?"[2]  Zamorano said, "Yeah."  The IJ
then asked whether anyone had filed a petition for Zamorano
"seeking [his] adjustment to a lawful permanent resident."
Zamorano said no.

The IJ then turned to the topic of Mexico, Zamorano's
designated country of removal.  This exchange followed:

| | |
|---|---|
| IJ: | Do you have any fear of returning to Mexico? |
| Zamorano: | I don't know anybody in Mexico, my family's all here. |
| IJ: | Okay.  I understand that may be the situation, but my question is a little different than that. |
| Zamorano: | Yeah |
| IJ: | My question was, do you have any fear of returning to Mexico? |
| Zamorano: | I fear that I don't know how to start a life in a new country, pretty much. |
| IJ: | Okay |
| Zamorano: | That's what I fear. |

---

[2] The "U-visa" refers to U nonimmigrant status under 8 U.S.C.
§ 1101(a)(15)(U)(i).  *See also* 8 C.F.R. § 214.14.

IJ:              Any other reason that you
                fear returning to Mexico?

Zamorano:    Not that I know of.

After this exchange, the IJ stated: "Well, sir, there does not appear to be any qualifying relatives for cancellation of removal and no[] petitions for any adjustment, and the single reason you give of not knowing how to start a new life in Mexico is not a valid reason for asylum or related relief." The IJ explained that "at this stage I don't see any forms of relief available to you, except maybe voluntary departure."

Turning to the possibility of voluntary departure, the IJ asked the government whether Zamorano had "any criminal history relevant to voluntary departure." According to the government, Zamorano had been convicted for driving under the influence in 2014 and 2016. For the 2016 conviction, Zamorano was driving under the influence of alcohol, without a driver's license and while talking on the phone. Zamorano had also been arrested in 2018 and 2019 for disorderly conduct issues related to alcohol use, and was convicted for one of these disorderly conduct offenses.

Zamorano acknowledged the two DUIs but argued that there were mitigating circumstances. In 2014, he was driving to his girlfriend's house and lost control of the car due to a mechanical failure. He suffered a skull fracture from the resulting accident. He claimed that he completed the required programs and classes for a person convicted of a DUI. As to the DUI in 2016, Zamorano stated he was on the phone with his girlfriend when he lost control of the car. Zamorano disputed the report of a witness who said that Zamorano attempted to hit someone with his car. Zamorano likewise

explained that, although he was arrested for battery on a police officer who attempted to pull Zamorano from the car, Zamorano only accidentally hit the police officer. Finally, Zamorano claimed that his later disorderly conduct offense occurred only because police stopped him when he was walking home in his neighborhood.

The IJ concluded that given the persistent criminal issues, he would not grant voluntary departure as a matter of discretion. The IJ informed Zamorano that Zamorano could either appeal the IJ's decision or waive his right to appeal. Zamorano stated his intent to appeal.

The IJ then issued an oral decision. He first stated that Zamorano's "only fear of returning to Mexico was that he may not know how to start a new life there" and that "this was not a validly lawful reason to seek asylum or relief under the Convention Against Torture." Therefore, Zamorano's "only request for any form[] of relief is in the form of pre-conclusion voluntary departure."[3]

Zamorano's "criminal background, the repetitive nature of the DUI offenses, which both result[ed] in property damage, as well as the seriousness of those offenses and the continued issues [Zamorano] apparently has with alcohol" made the court "concerned" as to whether Zamorano was "deserving of any voluntary departure." For those reasons, the IJ stated that he would "deny pre-conclusion voluntary departure as a matter of discretion." The IJ ordered Zamorano removed to Mexico.

---

[3] "Pre-conclusion voluntary departure" refers to a grant of voluntary departure before the completion of removal proceedings. *See* 8 C.F.R. § 1240.26(b)(1).

B

Zamorano filed a pro se appeal with the BIA.  Zamorano primarily argued that the IJ abused his discretion in denying voluntary departure based on Zamorano's problems with alcohol.  According to Zamorano, the IJ failed to take into account that Zamorano does not have an alcohol problem, that he had completed required programs and classes to address his alcohol use, and that there were mitigating circumstances for his crimes of conviction.  Moreover, Zamorano argued that the IJ failed to consider that he is a person of good character and that he could have adduced evidence showing he had made contributions to his family and community.

Zamorano next raised a long list of other claimed bases for relief.  First, he claimed that he was a victim of domestic violence and that, because his mother was getting permanent residency, Zamorano was also eligible for a U-Visa. Zamorano argued that the IJ erred because the IJ "never interrogated [Zamorano] to see if he qualified for a U-Visa and thus violated [Zamorano's] due process."

Zamorano next claimed that he was planning to marry his fiancee and obtain adjustment of status through her.  He argued that the IJ violated his due process rights by failing to present him with an application that a U.S. citizen could use to petition to bring a fiancee into the United States for marriage.  He also stated that he was eligible for suspension of deportation under 8 U.S.C. § 1254a(a)(1),[4] cancellation of

---

[4] The government may designate a foreign country for temporary protective status (TPS) when the country has conditions such as armed

removal, and adjustment of status. Finally, Zamorano claimed he was eligible for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) because he belongs to a group that is "targeted, extorted and killed by gangs and cartels that work with authorities that the Government is unwilling or unable to stop." Zamorano identified this group as people who have lived in the United States for most of their lives but are deported to Mexico without family ties in Mexico. He claimed that the IJ erred in not presenting him with the opportunity to apply for these various forms of relief.

The BIA dismissed Zamorano's appeal. The BIA affirmed the IJ's denial of voluntary departure. It stated that, contrary to Zamorano's arguments, "his application was not denied for his inability to demonstrate good moral character." The BIA rejected Zamorano's argument that the IJ erred in denying cancellation of removal, because "a cancellation application was not before the Immigration Judge." The BIA also concluded that Zamorano was not eligible for suspension of deportation.

The BIA then addressed Zamorano's argument that he was "denied due process because he was not provided the opportunity to apply for" asylum, withholding of removal, or CAT relief. According to the BIA, "[t]he record reflects that when the Immigration Judge questioned him regarding his fear of returning to Mexico, he did not express a fear of persecution or harm upon return." Rather, the BIA explained, "Zamorano stated that he feared he did not 'know how to start a new life in a new country, pretty much.'" And "[w]hen the

---

conflict or an environmental disaster, which makes it unsafe for national to return. *See* 8 U.S.C. § 1254a. Mexico is not designated for TPS.

Immigration Judge asked if there were any other reasons to fear return to Mexico, [Zamorano] answered '[N]ot that I know of.'" Based on Zamorano's answers to the IJ's inquiries as to Zamorano's fear of returning to Mexico, the BIA determined that the IJ "reasonably did not inquire further" about Zamorano's fear and that, "[w]ithout an expressed fear of persecution if returned to Mexico, the Immigration Judge was not required to advise the respondent of the right to apply for asylum or withholding of removal, or make the appropriate application available."

Zamorano now petitions for review of the BIA decision and the IJ decision.

## II

We begin with Zamorano's claim on appeal that he was wrongly denied voluntary departure because the IJ abused his discretion in failing to consider Zamorano's positive factors, including his good character.

Although we lack jurisdiction to reweigh the agency's exercise of discretion in denying voluntary departure, *see* 8 U.S.C. § 1252(a)(2)(B)(i), we do have jurisdiction to review "constitutional claims or questions of law in challenges to denials of voluntary departure under § 1229c," *Corro-Barragan v. Holder*, 718 F.3d 1174, 1177 (9th Cir. 2013); *see also Rojas v. Holder*, 704 F.3d 792, 794 (9th Cir. 2012) (same). "Therefore, we have jurisdiction to review whether the BIA and IJ failed to consider the appropriate factors or relied on improper evidence." *Anaya-Ortiz v. Holder*, 594 F.3d 673, 676 (9th Cir. 2010) (citation omitted).

In exercising discretion to grant or deny requests for voluntary departure, IJs must "weigh favorable and unfavorable factors by evaluating all of them, assigning weight or importance to each one separately and then to all of them cumulatively." *Campos-Granillo v. INS*, 12 F.3d 849, 852 (9th Cir. 1993) (cleaned up); *see also Rojas*, 704 F.3d at 794. Favorable factors include "family ties within the United States; residence of long duration in this country, particularly if residence began at a young age" as well as "proof of rehabilitation if a criminal record exists; and other evidence attesting to good character." *Campos-Granillo*, 12 F.3d at 852 n.8. Where there is "no indication" in the IJ's decision that the IJ "considered *any* of those [favorable] factors when deciding the voluntary departure issue," we generally vacate and remand to the BIA. *See id.* at 853; *see also In re Aguilar-Mendez*, 28 I. & N. Dec. 262, 266–67 (BIA 2021) (citing *Campos-Granillo*, 12 F.3d at 852–53); *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (citing *Campos-Granillo*, 12 F.3d at 852).

In denying voluntary departure in this case, the IJ considered Zamorano's "criminal background, the repetitive nature of the DUI offenses, which both result[ed] in property damage, as well as the seriousness of those offenses and the continued issues [Zamorano] apparently has with alcohol." But the IJ did not consider any positive factors weighing in support of voluntary departure, such as Zamorano's arrival in the United States at a young age and his long-term residency without departure, even though the IJ mentioned these factors elsewhere in its opinion. Nor did the IJ mention Zamorano's claims regarding mitigating circumstances with respect to his criminal convictions.

We acknowledge that the IJ need not "follow a particular formula or incant 'magic words'" in exercising its discretion to grant voluntary departure, and "a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Dai*, 141 S. Ct. 1669, 1679 (2021) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). But here there was no indication that the IJ implicitly considered any favorable factors in making its voluntary departure determination. *See id.* Because there generally must be some indication that the IJ evaluated the favorable factors when considering whether to grant or deny voluntary departure, we grant Zamorano's petition for review and remand for further proceedings. *See Campos-Granillo*, 12 F.3d at 852–53.

## III

Next, Zamorano claims that the IJ made procedural errors during the immigration proceedings. Zamorano argues that the IJ violated immigration regulations by failing to advise Zamorano that he could apply for asylum and withholding of removal, *see* 8 C.F.R. § 1240.11(c)(1), and by failing to inform him of his apparent eligibility to apply for other immigration benefits, including U nonimmigrant status, *see id.* § 1240.11(a)(2).[5] He also argues that the IJ failed to discharge his duty to develop the record as to these claims.

---

[5] Zamorano argues that the IJ made these same procedural errors with respect to voluntary departure and Deferred Action for Childhood Arrivals (DACA). We need not address these arguments because we agree that the IJ erred in failing to evaluate Zamorano's positive factors when considering the availability of voluntary departure, *see supra* Part II, and as discussed below, we lack jurisdiction over the arguments regarding his eligibility for DACA, *see infra* Part III.A.3.

*See* 8 U.S.C. § 1229a(b)(1); *see also Jacinto v. INS*, 208 F.3d 725, 733–34 (9th Cir. 2000). Finally, Zamorano claims that these procedural errors violated his constitutional due process rights.

A

We begin with Zamorano's claim that the IJ failed to discharge his duties under 8 C.F.R. § 1240.11. Under this regulation, if an alien "expresses fear of persecution or harm upon return to any of the countries to which the alien might be removed" and "the alien has not previously filed an application for asylum or withholding of removal that has been referred to the immigration judge by an asylum officer in accordance with" a specified regulation, then the IJ must (i) "[a]dvise the alien that he or she may apply for asylum in the United States or withholding of removal," (ii) "[m]ake available the appropriate application forms," and (iii) "[a]dvise the alien of the privilege" of representation by counsel at no expense to the government and of the consequences for "knowingly filing a frivolous application for asylum." 8 C.F.R. § 1240.11(c)(1)(i)–(iii). Further, an IJ "shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter [Title 8, Chapter V of the Code of Federal Regulations] and shall afford the alien an opportunity to make application during the hearing." *Id.* § 1240.11(a)(2).

In reviewing claims that an IJ failed to discharge the duty to inform the alien of apparent eligibility for relief, we focus on two issues. *See C.J.L.G. v. Barr*, 923 F.3d 622, 627 (9th Cir. 2019) (en banc). First, the duty to advise an alien of "apparent eligibility to apply for any of the benefits enumerated in" Chapter V under § 1240.11(a)(2) is "triggered

whenever the facts before the IJ raise a 'reasonable possibility that the petitioner may be eligible'" for such relief. *Id.* at 626–27 (quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989)). Although "the regulations do not require a reviewing court to conclude that an alien would certainly qualify for relief," *id.* at 628 (cleaned up), the IJ's advice may not be required if "a petitioner would be eligible for relief only after a change in the law or a change in his personal circumstances," *id.* at 628 n.5, such as when an alien "'needed not only time but also to either marry his U.S.-citizen girlfriend or to have his parents successfully petition for citizenship,'" *id.* (quoting *United States v. Moriel-Luna*, 585 F.3d 1191, 1198 n.2 (9th Cir. 2009)).

Second, a "failure to advise" about "apparent eligibility to apply for any of the benefits enumerated," in Chapter V, *id.* at 626, can be excused "when the petitioner's eligibility for relief is not 'plausible,'" *id.* at 627 (quoting *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1265–67 (9th Cir. 2013)). Said otherwise, if a petitioner does not have a plausible basis for a Chapter V benefit, the alien was not prejudiced by the failure to advise. *See id.*; *see also Rojas-Pedroza*, 716 F.3d at 1263.

1

We first consider whether the IJ erred in failing to advise Zamorano of the right to apply for asylum and withholding of removal or erred in failing to inform Zamorano of apparent eligibility to apply for such relief. To be eligible for asylum, the alien must have suffered persecution or have "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also id.*

§ 1158(b)(1)(A); *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). For withholding of removal, the alien must show that his "life or freedom would be threatened because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b).

Zamorano's statement to the IJ, "I fear I don't know how to start a new life in a new country," does not amount to an expression of "fear of persecution or harm" under § 1240.11(c) that would have required the IJ to advise Zamorano of the ability to apply for asylum or withholding of removal and make such an application available. *See Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc) (defining persecution). Given that the fear of starting a new life in a new country was his only stated fear, Zamorano did not raise a "reasonable possibility" that he may be eligible for asylum or withholding of removal that would trigger the IJ's duty to inform Zamorano of his "apparent eligibility" to apply for such forms of relief under § 1240.11(a)(2). *See C.J.L.G.*, 923 F.3d at 627.

2

Zamorano next claims that the IJ erred under 8 C.F.R. § 1240.11(a)(2) by failing to advise him of his apparent eligibility for adjustment of status through U nonimmigrant status. U nonimmigrant status may be directly available for certain victims of qualifying criminal activity who assist law enforcement investigations, *see* 8 U.S.C. § 1101(a)(15)(U)(i)(I)–(III); *see also* 8 C.F.R. § 214.14(b), and available derivatively for certain qualifying family members of the victim, including the victim's child (defined as an unmarried person under age 21). *See* 8 U.S.C.

§ 1101(a)(15)(U)(ii)(II); 8 C.F.R. § 214.14(a)(10); *see also* 8 U.S.C. § 1101(b)(1).

The IJ did not err under § 1240.11(a)(2), because that regulation imposes a duty to inform aliens of their "apparent eligibility" only as to benefits enumerated in Chapter V. *See* 8 C.F.R. § 1240.11(a)(2); *C.J.L.G.*, 923 F.3d at 627 (describing the status at issue there as "[o]ne of the benefits listed 'in this chapter'"). U nonimmigrant status is not enumerated in Chapter V, which governs the Department of Justice and Executive Office for Immigration Review. Rather, it is covered by Title 8, Chapter I of the Code of Federal Regulations, which governs the Department of Homeland Security. Within Chapter I, 8 C.F.R. § 214.14 describes U nonimmigrant status eligibility and application procedures for petitioning United States Citizenship and Immigration Services (USCIS), and 8 C.F.R. § 245.24 provides the eligibility requirements for U nonimmigrants to adjust to lawful permanent resident status and provides the procedures to apply for adjustment of status.[6] There is no provision in Chapter V parallel to § 214.14 or § 245.24 from Chapter I. Therefore, because U nonimmigrant status is not a Chapter V benefit, the IJ's failure to address the U nonimmigrant form of relief did not violate § 1240.11(a)(2).

3

Finally, Zamorano argues that the IJ erred under § 1240.11(a)(2) by failing to advise Zamorano of his apparent

---

[6] Zamorano recognizes that the "this chapter" language in 8 C.F.R. § 1240.11(a)(2) "arguably means" that the section "does not apply to U-visas."

eligibility for DACA. Zamorano did not raise this claim in his brief before the BIA. Because such a claim raises "mere procedural error," *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004), and not a constitutional challenge beyond the competence of the BIA to decide, the claim is unexhausted and we lack jurisdiction to consider it, *see id.* at 677; 8 U.S.C. § 1252(d)(1).

Zamorano nevertheless contends that he is excused from exhausting his claims before the BIA under our reasoning in cases construing 8 U.S.C. § 1326(d), which governs collateral challenges to removal orders in illegal reentry cases. The argument goes as follows. Aliens who reenter the United States after removal are liable for criminal penalties under 8 U.S.C. § 1326. In a criminal proceeding under § 1326, aliens may challenge the validity of the underlying removal order only if they meet certain requirements, including that "the alien exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). In this context, we have held that the exhaustion requirement is excused if the IJ in the underlying removal proceeding "failed to inform the defendant of his or her apparent eligibility for relief as required by 8 C.F.R. § 1240.11(a)(2)." *Rojas-Pedroza*, 716 F.3d at 1262 (internal quotation marks omitted). We excuse exhaustion in this context because "we deem the alien's waiver of the right to an administrative appeal to have been insufficiently 'considered and intelligent.'" *Id*. (quoting *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013)). Zamorano argues that we should similarly excuse his failure to exhaust his DACA claim in his appeal to the BIA because of the IJ's failure to inform Zamorano of his apparent eligibility for DACA, just as we excuse the failure to exhaust administrative remedies in the § 1326(d) context.

This argument fails. As an initial matter, the Supreme Court has instructed us that "a court may not excuse a failure to exhaust" when, as in § 1326(d), Congress "uses 'mandatory language' in an administrative exhaustion provision." *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1621 (2021) (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)), and this holding casts doubt on the continued vitality of our exhaustion excusal rule under § 1326(d). But we need not resolve the effect of *Palomar-Santiago* in the § 1326(d) context, because, in any event, our judge-made exception to § 1326(d)(1) does not apply to the jurisdictional exhaustion requirement of § 1252(d)(1).[7]  Federal courts "must 'scrupulously confine their own jurisdiction to the precise limits which a federal statute has defined.'" *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1443 (9th Cir. 1997) (alteration adopted) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). Looking to those precise statutory limits here, "[t]he plain language of § 1252(d)(1) . . . specifically mandates that the exhaustion of administrative remedies is a prerequisite to our jurisdiction." *Barron*, 358 F.3d at 677. A judge-made rule designed to give a criminal defendant more leeway to bring a collateral challenge to a removal order cannot overrule Congress's limits on our subject-matter jurisdiction. Therefore, we hold that the exhaustion exception under § 1326(d) does not apply to § 1252(d)(1).

---

[7] 8 U.S.C. § 1252(d)(1) provides, "A court may review a final order of removal only if— (1) the alien has exhausted all administrative remedies available to the alien as of right . . . ."

B

We now turn to Zamorano's statutory and constitutional claims. By statute, an IJ shall, among other things, "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). We have concluded that this statutory language implicitly encompasses two additional procedural protections. *See Agyeman v. INS*, 296 F.3d 871, 876–86 (9th Cir. 2002); *Jacinto*, 208 F.3d at 727–28.

First, the IJ has an obligation to explain to an alien what he must prove to establish the basis for the relief he seeks. *Agyeman*, 296 F.3d at 883. "We have previously emphasized the importance of explaining to an alien what evidence will demonstrate their eligibility for relief from deportation." *Id.* (citing *Jacinto*, 208 F.3d at 728). In *Agyeman*, for instance, the IJ informed an alien seeking adjustment of status that unless his wife was physically present at the next hearing, his application would be denied. *Id.* at 878–79. The alien's wife had medical issues that prevented her from attending the hearing, and the IJ denied the alien's application because he had failed to establish the validity of his marriage. *Id.* We granted the alien's petition, holding that the IJ's failure to explain the types of evidence that could be used to demonstrate the alien's eligibility for relief from removal was an error. *Id.* at 882–83. We explained that "[t]he IJ must be responsive to the particular circumstances of the case, including what types of evidence the alien can and cannot reasonably be expected to produce in support of his applications for relief from deportation." *Id.* at 884.

Second, if the alien is proceeding pro se, the IJ has an obligation to fully develop the record, meaning the IJ must

"scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Jacinto*, 208 F.3d at 733 (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)). "The judge must be especially diligent in ensuring that favorable as well as unfavorable facts are elicited." *Id.* (cleaned up).

These procedural protections do not, however, detract from the alien's statutory burden of proof to establish that the alien satisfies the applicable eligibility requirements for the relief sought, 8 U.S.C. § 1229a(c)(4), or from the alien's obligation to provide evidence "in support of the applicant's application for relief or protection," *id.* § 1229a(c)(4)(B). Nor does the IJ's duty "transform IJs into attorneys for aliens appearing pro se in deportation proceedings." *Agyeman*, 296 F.3d at 884; *see also Hussain v. Rosen*, 985 F.3d 634, 643–45 (9th Cir. 2021).

Where the IJ has failed to discharge these procedural duties under § 1229a(b), we must consider whether the alien has suffered a constitutional due process violation. "A due process violation occurs where '(1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation.'" *Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (per curiam) (quoting *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006)). A violation of the IJ's statutory duty may affect the outcome of the proceedings if "the IJ's inadequate explanation of the hearing procedures and failure to elicit pertinent facts prevented the alien from presenting evidence relevant to their claim." *Agyeman*, 296 F.3d at 884–85. We may infer that the alien suffered prejudice

even in "the absence of any specific allegation as to what evidence [the alien] would have presented had the IJ adequately explained what he needed to prove to demonstrate his eligibility for relief and had he been provided the opportunity to present that evidence." *Id.* at 885.

We now consider whether the IJ here violated his duty to sufficiently explore for all facts relevant to asylum, withholding of removal, and U nonimmigrant status, and to inform Zamorano of what evidence he needed to establish these claims.

With respect to asylum and withholding of removal, the IJ asked pertinent questions directed to determining whether Zamorano was eligible for such relief based on a fear of persecution upon return to Mexico. But once Zamorano testified that the only reason he feared returning to Mexico was that he didn't "know how to start a life in a new country," there was nothing left for the IJ to do, because Zamorano's own testimony established there was no basis for asylum or withholding of removal. By contrast, the alien in *Jacinto* attempted to testify in support of her claim that "members of the Guatemalan military were persecuting her and her family," 208 F.3d at 727, but the IJ frequently interrupted her testimony, "never gave her the opportunity to present her own additional narrated statement that might have added support to her claim," *id.* at 734, and failed to explain how these facts would be relevant to a claim for asylum. Unlike the IJ in *Jacinto*, the IJ here did not deprive Zamorano of a reasonable opportunity to develop his own story relevant to a claim for asylum or withholding of removal. Because Zamorano did not have a plausible claim for asylum or withholding of removal based on his testimony, and because the IJ did not deprive Zamorano of the chance to provide such

a plausible basis for this relief, the IJ did not violate his statutory duty to develop the record or to advise Zamorano about what types of evidence Zamorano could use to support his (nonexistent) claims.[8]

Zamorano next claims that the IJ violated his duty to explore for all facts relevant to Zamorano's possible U nonimmigrant status. We disagree, because Zamorano did not indicate he was seeking such relief and nothing in the proceedings would have prompted the IJ to develop more facts on this issue. Zamorano's testimony that his mother was seeking a U-Visa was in response to the IJ's questions regarding whether any of Zamorano's relatives had lawful status in the United States, and therefore could assist Zamorano in applying for adjustment of status. In light of Zamorano's testimony, Zamorano's mother did not have lawful status and therefore could not give him such help. Because Zamorano's testimony indicated that he was over 21 years old at the time of the hearing, Zamorano would not have qualified for derivative U nonimmigrant relief through his mother. *See* 8 U.S.C. § 1101(a)(15)(U)(ii)(II); 8 C.F.R. § 214.14(a)(10) (defining qualifying family members for derivative U nonimmigrant status); *id.* § 214.14(f)(1)

---

[8] Contrary to Zamorano, the Fourth Circuit's decision in *Quintero v. Garland*, ___ F.3d ___, 2021 WL 2133916, at *17 (4th Cir. May 26, 2021), does not affect our analysis here. In *Quintero,* the Fourth Circuit held that when pro se petitioners "whose *factual* circumstances warrant" relief struggled in "articulating the *legal* bases for his or her claim," the IJ had a legal duty to explain and explore facts relevant to the legal elements of petitioners' claims for relief. *See id.* at *11–12. Even if we agreed that § 1229a(b)(1) imposes this requirement on an IJ, the IJ here discharged any obligation to explore relevant facts regarding Zamorano's fear of returning to Mexico; the facts simply did not support any plausible basis for an application for relief.

(describing eligibility for qualifying family members, such as children); *see also* 8 U.S.C. § 1101(b)(1) (defining "child" as "unmarried person under twenty-one years of age"). Finally, Zamorano gave no indication that he suffered from domestic violence himself or that he himself was seeking direct U nonimmigrant status as a victim of qualifying criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14(a)(14).[9] Therefore, nothing alerted the IJ that more questioning was required to probe for facts relating to direct or derivative U nonimmigrant status.

Moreover, any error in failing to ask additional probing questions was harmless. "Neither the BIA nor IJs have authority over U visa petitions; that authority rests solely with United States Citizenship and Immigration Services." *Flores v. Barr*, 930 F.3d 1082, 1090 (9th Cir. 2019) (per curiam). The IJ would have authority only to continue the proceeding "at the request of a petitioner who has applied for a U Visa." *Ramirez Sanchez v. Mukasey*, 508 F.3d 1254, 1255–56 (9th Cir. 2007) (per curiam). But no action of the IJ prevented Zamorano from petitioning for U nonimmigrant status. Even if an alien is in removal proceedings, the alien can still obtain U nonimmigrant status, and then request a termination of immigration proceedings. 8 C.F.R. § 214.14(c)(1)(i). Even after a final order of removal, an alien may petition for U

---

[9] 8 U.S.C. § 1101(a)(15)(U)(i) sets forth the eligibility requirements for U nonimmigrant status. It requires, among other things, that "the alien has suffered substantial physical or mental abuse as a result of" the qualifying criminal activity, that the alien "possesses information concerning" the qualifying criminal activity, and that the alien "has been helpful, is being helpful, or is likely to be helpful to" certain government entities "investigating or prosecuting" the qualifying criminal activity. 8 U.S.C. § 1101(a)(15)(U)(i)(I)–(III); *see also* 8 C.F.R. § 214.14(b) (providing additional information regarding eligibility).

nonimmigrant status and request a stay of removal. *Id.* § 214.14(c)(1)(ii). If Zamorano were eligible for U nonimmigrant status (as he suggests in his BIA appeal brief), he had ample time to apply for it, and he has not explained how the IJ's failure to develop additional facts at the immigration proceeding affected his ability to obtain such relief. Therefore, Zamorano fails to show any prejudice that could support his due process claim.

Nor did Zamorano show any prejudice from the BIA's failure to address his argument on appeal that he was a victim of domestic violence or was eligible for U nonimmigrant relief through his mother. As a general rule, the BIA errs if it ignores material issues or arguments raised on appeal, or fails to make a finding on an essential issue. *See Chen v. Ashcroft*, 362 F.3d 611, 621–22 (9th Cir. 2004). Any error here was harmless. We apply "traditional administrative law principles" in reviewing immigration agency decisions, *Dai*, 141 S. Ct. at 1679, which include the rule that reviewing courts shall take "due account" of "the rule of prejudicial error," *see* 5 U.S.C. § 706; *see also, e.g.*, *Khudaverdyan v. Holder*, 778 F.3d 1101, 1107 n.3 (9th Cir. 2015) (applying the harmless error rule); *Vides-Vides v. INS*, 783 F.2d 1463, 1467 n.2 (9th Cir. 1986) (holding that the IJ erred in stating that the alien's decision to remain neutral was not a political opinion, but the error was harmless because the alien "failed to show that he will be singled out for persecution because of his neutrality").[10] As noted above, Zamorano discussed his mother's "domestic violence case" without even hinting to the IJ that he was also a victim of domestic violence or was

---

[10] Other circuits proceed similarly. *See, e.g.*, *Yuan v. Holder*, 642 F.3d 420, 427 (3d Cir. 2011) (collecting harmless error cases from the First, Second, Fourth, Seventh, and Tenth Circuits).

seeking U nonimmigrant status, and we have approved the BIA's practice of "refusing to address arguments raised for the first time on appeal" that could have been made to the IJ. *See Honcharov v. Barr*, 924 F.3d 1293, 1295 (9th Cir. 2019) (per curiam). Moreover, Zamorano suffered no prejudice because, as explained above, he had no apparent eligibility for purposes of § 1240.11(a)(2) and did not recount any facts or personal history that would trigger the IJ's duty to develop the record. *See* 8 U.S.C. § 1229a(b)(1). "We will not usually overturn agency action unless there is a showing of prejudice to the petitioner." *Kazarian v. USCIS*, 596 F.3d 1115, 1119 (9th Cir. 2010) (quoting *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002)). Therefore, we reject Zamorano's argument regarding the BIA's procedural error.

**PETITION FOR REVIEW GRANTED IN PART, DENIED IN PART, AND DISMISSED IN PART.**