**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2034
_____

PATRICK JULNEY,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review from the
Board of Immigration Appeals
(Agency No. BIA-1: A077-836-163)
Immigration Judge: Mirlande Tadal
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on January 25, 2022
_____

Before: HARDIMAN, SHWARTZ, and FUENTES, *Circuit Judges*

(Opinion filed: July 27, 2022)
_____

OPINION[*]
_____

---

[*]    This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

**FUENTES**, *Circuit Judge*.

Patrick Julney petitions for review of a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal after an Immigration Judge ("IJ") denied him asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Julney challenges only the IJ's denial of deferral of removal under the CAT. For the reasons below, we will deny his petition.

I.

Julney is a native and citizen of Haiti. He entered the United States on an unknown date, but had his status adjusted to that of a lawful permanent resident in 2005. In 2019, the Department of Homeland Security sought to remove Julney from the country after he was convicted of three state crimes: two counts of robbery,[1] and one count of possession of a controlled substance with intent to distribute.[2]

At the ensuing hearing, Julney admitted the factual allegations against him but filed an application for asylum, withholding of removal, and relief under the CAT. Acting *pro se*, Julney testified in support of his application, as did his aunt and uncle. The crux of Julney's CAT claim was that he feared torture upon returning to Haiti because his father was a musician killed in Haiti as a result of his music, which was

_____

[1] N.J. Stat. Ann. § 2C:15-1.
[2] N.J. Stat. Ann. § 2C:35-7.

critical of the Haitian government and called for social awareness.

The IJ sustained the charges of removability and denied Julney's application.[3]  As relevant here, the IJ denied deferral of removal under the CAT because Julney failed to show that it was more likely than not that he would be tortured if removed to Haiti. According to the IJ, the objective evidence in the record failed to show that Julney would be at risk of torture or that the Haitian government would consent or acquiesce to any supposed torture.  The BIA, having determined that Julney failed to submit sufficient evidence to meet his burden for CAT protection, dismissed his appeal.[4]  Julney now petitions this Court for review.

II.[5]

Julney raises two issues for review: (1) whether the IJ failed to develop the record in violation of 8 U.S.C. § 1229a(b)(1) and the Due Process Clause of the Fifth Amendment; and (2) whether the IJ erred in failing to follow the *Abdulai* inquiry.[6]  We address each in turn.[7]

---

[3] The IJ denied asylum and withholding of removal because Julney's conviction of a particularly serious crime rendered him ineligible.

[4] Julney challenged only the denial of his CAT claim before the BIA.

[5] We have jurisdiction to review the BIA's decision under 8 U.S.C. § 1252(a)(1). Because the BIA adopted the IJ's reasons concerning the denial of CAT relief, "we review both the BIA and IJ decisions." *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 270 (3d Cir. 2012) (internal quotation marks and citation omitted).

[6] *Abdulai v. Ashcroft*, 239 F.3d 542 (3d Cir. 2001).

[7] Because Julney challenges only legal determinations, we review de novo. *See Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020) ("[W]e review the [agency's] legal determinations de novo, including both pure questions of law and applications of law to undisputed facts" (cleaned up)); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595–96 (3d Cir. 2003) ("We review de novo whether [the applicant's] due

3

A.    *The IJ did not fail to develop the record.*

Under 8 U.S.C. § 1229a(b)(1), an IJ shall, among other things, "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." We have interpreted this section to mean that an IJ has a duty to help develop an applicant's testimony and to introduce evidence into the record.[8] This duty is especially important when an applicant is acting *pro se*.[9] However, an IJ must maintain impartiality and refrain from becoming an advocate for either side.[10]

It is also well settled that applicants in deportation proceedings must be afforded due process of law.[11] In the removal context, due process entitles the applicant to: "(1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[12] To make out a claim for a violation of due process, the applicant must prove a violation of one of the three requirements above, as well as an initial showing of substantial prejudice.[13] Substantial prejudice can be met by "showing that the infraction has the *potential* for affecting the

process rights were violated."); *Blanco v. Att'y Gen.*, 967 F.3d 304, 316 (3d Cir. 2020) (finding that the IJ's failure to engage in the three-part *Abdulai* inquiry was "legal error").
[8] *Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006).
[9] *Saravia v. Att'y Gen.*, 905 F.3d 729, 736 n.33 (3d Cir. 2018).
[10] *Abdulrahman*, 330 F.3d at 596; *see also Zamorano v. Garland*, 2 F.4th 1213, 1226 (9th Cir. 2021) (holding that the IJ's duty under § 1229a(b)(1) does not "transform IJs into attorneys for aliens appearing *pro se* in deportation proceedings" (internal quotation marks omitted)).
[11] *See Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017).
[12] *Id.* (cleaned up).
[13] *See Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005).

4

outcome of the deportation proceedings."[14] We have recently linked an IJ's failure to develop the record to a violation of due process.[15]

Here, the IJ adequately discharged her duty to develop the record. She properly instructed Julney about the hearing procedures and the relevant legal requirements, she provided Julney a full opportunity to present his case, and she asked probative and clarifying questions when necessary. Before the hearing, the IJ explained the legal requirements under the CAT and that Julney would need objective evidence, such as affidavits and witness testimony, to establish his CAT claim. At the beginning of the hearing, the IJ again explained the purpose of the hearing, what Julney would have to prove, and the standard to which he would be held. The IJ also instructed Julney on how to use his witnesses to his benefit. The IJ further developed the record by entering Julney's documentary evidence and facilitating the testimony of his witnesses.

Contrary to Julney's assertion that the IJ failed to inquire into facts relevant to his claim, the record shows that she regularly asked non-superficial and clarifying questions to Julney and his witnesses. For example, after Julney testified that he would be tortured in Haiti because his father was tortured and killed there, the IJ proceeded to ask about when his father was killed, where he was killed, where Julney was at the time, how his father died, and who killed him. The IJ also took over the questioning of Julney's

---

[14] *Serrano-Alberto*, 859 F.3d at 213 (cleaned up) (emphasis in original).
[15] *See Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 486 (3d Cir. 2022); *see also Quintero v. Garland*, 998 F.3d 612, 623–24 (4th Cir. 2021) (observing that a developed record is essential for a full and fair hearing, as required by the Fifth Amendment's Due Process Clause).

5

witnesses at times when Julney struggled. To the extent that Julney argues that the IJ improperly curtailed his witnesses' testimony, the IJ only shortened or steered testimony when it became repetitive or irrelevant, such as when Julney's aunt began to testify that she was charged for the phone call informing her that Julney's mother had died. Thus, the IJ fulfilled her duty to develop the record.

Finally, because we find that the IJ adequately discharged any obligation to explore relevant facts about Julney's fear of returning to Haiti, Julney's due process claim also fails. As noted above, Julney was given a full opportunity to present his case, enter evidence into the record, and question witnesses with the IJ's help when necessary. He therefore was not denied due process.[16]

B.      *The* Abdulai *inquiry was not required.*

Corroborating evidence may be required even where an applicant has presented credible testimony.[17] But "[b]efore requiring corroborating evidence, i.e., deciding that 'failure to corroborate undermines' a claim, an IJ must follow the *Abdulai* inquiry."[18] The inquiry demands that an IJ requiring corroboration first: "(1) identify the facts for which it is reasonable to expect corroboration; (2) inquire as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) analyze whether the applicant has adequately explained his or her failure to do so."[19]

---

[16] Because Julney has failed to show an underlying due process violation, we will not address substantial prejudice.

[17] *See He Chun Chen v. Ashcroft*, 376 F.3d 215, 225 (3d Cir. 2004).

[18] *Luziga v. Att'y Gen.*, 937 F.3d 244, 255 (3d Cir. 2019) (quoting *Saravia*, 905 F.3d at 736).

[19] *Id.* (cleaned up).

6

When an IJ fails to "'develop [a noncitizen applicant's testimony] in accord with the *Abdulai* steps' and 'hold[s] the lack of corroboration against [the] applicant,' we vacate and remand."[20]

Here, the IJ was not required to engage in the *Abdulai* inquiry because she did not hold any lack of corroboration against Julney.[21]  Although Julney highlights a time when the IJ admonished him for not having his parents' death certificates, the IJ never held the failure to obtain those documents against him.  For one, the agency ultimately provided the father's death certificate.  For another, the IJ never doubted the validity of how Julney's parents died.  Indeed, Julney even acknowledges that the IJ "never made a corroboration . . . finding."[22]

At most, the IJ made a credibility determination about where Julney was when his father died.  But corroboration and credibility, although intuitively related, are distinct concepts that should be analyzed independently.[23]  Because the IJ did not make an adverse corroboration finding, there was no *Abdulai* error.

## III.

For these reasons, we will deny Julney's petition for review.

---

[20] *Id.* (quoting *Chukwu v. Att'y Gen.*, 484 F.3d 185, 192 (3d Cir. 2007)).
[21] *See Youkhanna v. INS*, 749 F.2d 360, 362 (6th Cir. 1984) ("[T]he problem is not that [the applicant's] testimony was rejected, but rather that the immigration judge did not share [the applicant's] conclusion as to what his testimony established.").
[22] Petitioner's Br. at 16.
[23] *See Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005).