**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DJALMA ANTONIO MARTINS, Jr.,

         Petitioner,

  v.

MERRICK B. GARLAND, Attorney
General,

         Respondent.

No. 23-363

Agency No.
A206-191-606

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 18, 2024
Seattle, Washington

Before: McKEOWN, GOULD, and LEE, Circuit Judges

    Djalma Antonio Martins, Jr., a native and citizen of Brazil, seeks review of an

order by the Board of Immigration Appeals (BIA) dismissing his appeal of the

Immigration Judge's (IJ) decision denying his application for withholding of

removal and protection under the Convention Against Torture (CAT).  We have

jurisdiction under 8 U.S.C. § 1252, and for the reasons discussed below, we deny

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

the petition.

We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *See Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022). "Where, as here, the BIA expressly adopts the reasoning of the IJ and adds some of its own reasoning, we review both decisions." *Nehad v. Mukasey*, 535 F.3d 962, 966 (9th Cir. 2008).

1. <u>Waiver of withholding of removal claim.</u>  Martins argued to the BIA that the IJ erred by finding him ineligible for withholding of removal under the "serious nonpolitical crime bar" because he committed acts of juvenile delinquency, not crimes. 8 U.S.C. § 1231(b)(3)(B)(iii). The BIA found that Martins waived his challenge to the application of the serious nonpolitical crime bar by not raising it before the IJ. Martins contends that this was error, but we agree with the BIA.

Because Martins had an opportunity to raise his juvenile exception argument before the IJ but failed to do so, the BIA properly deemed his argument waived. *See Honcharov v. Barr*, 924 F.3d 1293, 1296 (9th Cir. 2019) (finding that the BIA may in "its role as an appellate body" decline to hear arguments raised for the first time on appeal). While it is true that the IJ—not the government—first raised the serious nonpolitical crime bar late in the hearing, Martins had an opportunity to raise his juvenile exception argument at any point following the IJ's verbal notice. Martins made no indication of disagreement when the IJ raised the serious nonpolitical crime

bar. Martins's attorney immediately resumed direct examination after the IJ's declaration, and she neither raised the juvenile exception argument nor elicited relevant testimony from Martins. Martins also had an opportunity to raise the issue in closing argument. At no point after the IJ gave his verbal notice did Martins "even hint[ ]" at whether his status as a juvenile affected his eligibility. *Zamorano v. Garland*, 2 F.4th 1213, 1228 (9th Cir. 2021). Because Martins raised an argument to the BIA that he failed to raise below, the BIA did not err by determining that Martins waived that argument.

2. <u>CAT claim</u>. Martins contends that the BIA erred by finding that he does not qualify for deferral of removal under CAT. To obtain CAT deferral, Martins must show that he is "more likely than not" to face torture upon returning to Brazil "at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1089 (9th Cir. 2020); *see also* 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1). The BIA found that Martins did not show both (1) that he is more likely than not to be tortured by the Red Command and (2) that the state would acquiesce in any future torture. Because substantial evidence supports the BIA's determination that Martins failed to show sufficient state involvement in any future torture (which is dispositive of the claim), we do not reach Martins's arguments about his likelihood of future torture.

The record does not compel us to disagree with the BIA's conclusion that

Brazilian officials would not acquiesce in any future torture of Martins because the "Brazilian government is taking significant action in dealing with the Red Command and other gangs in Brazil." *See Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007*)* ("Under the substantial evidence standard, the court upholds the BIA's determination unless the evidence in the record compels a contrary conclusion."). The Brazilian government has created special elite police units to combat the Red Command. Brazil's pacification program aims to reduce gang wars by establishing a constant police presence in pacified areas. Homicides declined 65 percent in pacified areas. While Martins points to some evidence in the record that indicates police have been accused of working with local drug traffickers, the record also indicates that gang leaders continue to see the police as an enemy to combat. Further, the Brazilian government deployed thousands of troops to combat organized crime, helping the underfunded police to battle the drug gangs and to clean up police corruption. Even if Brazil's efforts to control the gangs sometimes fall short, a "problem controlling gang activity" does not prove government acquiescence. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1035 (9th Cir. 2014) (citation omitted).

Martins contends that the BIA erroneously distinguished *Xochihua-Jaimes v. Barr*, 962 F.3d 1175 (9th Cir. 2020) from his case. In *Xochihua-Jaimes*, the court emphasized that "rogue" local officials may count as state acquiescence even when there are "national efforts to combat drug cartels." *Id.* at 1184–85. But here, the IJ

and BIA did not rely only on national efforts to refute evidence of local corruption. Rather, the record contains sources that give varying accounts of the amount of police corruption at the local level. Further, unlike the petitioner in *Xochihua-Jaimes*, Martins has not provided evidence of state acquiescence in past torture. *See id.* at 1185. In sum, substantial evidence supports the BIA's conclusion that Brazilian officials would not acquiesce to torture by the Red Command because of the significant state effort to eliminate the gang. *See Aden v. Holder*, 589 F.3d 1040, 1046 (9th Cir. 2009) ("Our standard of review . . . does not enable us to substitute our judgment . . . for the BIA's.").

**PETITION DENIED.**