**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VARUN GOEL,

              *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

              *Respondent.*

No. 05-70298

Agency No.
A78-638-722

VARUN GOEL,

              *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

              *Respondent.*

No. 05-74006

Agency No.
A78-638-722

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 20, 2007—San Francisco, California

Filed June 14, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
Stephen S. Trott, Circuit Judge, and Gary A. Feess,*
District Judge.

*The Honorable Gary A. Feess, United States District Judge for the
Central District of California, sitting by designation.

7199

Per Curiam Opinion

**COUNSEL**

Martin Resendez Guajardo and Teresa Salazar, Law Office of Martin Resendez Guajardo, San Francisco, California, for the petitioner.

Darcy Katzin and Lindsay L. Chichester, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

PER CURIAM:

Petitioner Varun Goel, a native and citizen of India, petitions for review of his final order of removal. He challenges the adverse credibility finding in the Immigration Judge's decision that was summarily affirmed by the Board of Immigration Appeals. He also challenges the BIA's later denial of a motion to reopen that was supported primarily by polygraph examination results.

The case presents an issue of first impression regarding the use of polygraph results in motions to reopen removal decisions. We agree with the BIA that polygraph evidence provides no adequate basis for reopening because it is not evidence that was previously unavailable within the meaning of the applicable regulation. 8 C.F.R. § 1003.2(c). Moreover, in this case, the original negative credibility finding was supported by substantial evidence. We therefore deny the petition.

## BACKGROUND

Goel ascribes to the Nirankari faith, a minority religious group in India. He claims to have been persecuted in India, on account of his religious beliefs, by Sikh militants as well as by police officials, all of whom are allegedly hostile to those identifying as Nirankari. After entering the United States on a nonimmigrant visa and overstaying its terms, Goel was placed in removal proceedings. He conceded removability, and applied for asylum, withholding of removal, and relief under the Convention Against Torture.

The IJ denied all applications for relief, primarily on the basis of a negative credibility finding, concluding that Goel's testimony materially contradicted the documentary evidence in several ways. For example, Goel testified that on one occa-

sion, Sikh militants fired upon him and his family with heavy rounds of ammunition in a drive-by shooting at their home. A press report, however, submitted by Goel in support of his application, was not consistent with Goel's testimonial version of the event. The report described Goel and his father as having been physically beaten outside their home. It described the assailants as having fired into the air in a show of intimidation as they ran off to their vehicle.

Goel also testified that he was not injured in the attack, but this too was inconsistent with the press report's version of the incident, which described Goel and his father as having sustained injuries. When asked to explain these inconsistencies, Goel responded only that the report was wrong.

Goel further testified that he and his father were arrested and tortured for several days by local police when they tried to report the attack on their home. According to Goel's testimony, the police beat his knees with sticks, forcibly stripped him of his clothes, and ripped off patches of skin with a knife, rendering him unconscious from the pain. This too contradicted the documentary evidence. A letter written by Goel's father and also submitted by Goel, described only a brief period of humiliation and harassment, and did not mention any torture, physical abuse, or lengthy confinement.

The IJ noted all of these inconsistencies in making a negative credibility finding, observed Goel had a "tendency to exaggerate," and denied relief. The BIA summarily affirmed without opinion, and Goel timely petitioned this court for review.

While the petition was pending, Goel filed a motion to reopen pursuant to 8 C.F.R. § 1003.2(c)(1). The motion was supported primarily by polygraph examination results going to the veracity of Goel's testimony before the IJ regarding the torture in India. He claimed the polygraph report was evidence that was "not available" within the meaning of the

applicable regulation's provision that motions to reopen must be supported by evidence "not available" earlier. 8 C.F.R. § 1003.2(c)(1).

The only relevant questions and answers in the proffered polygraph report were the following:

> (1)   Have you lied about being tortured during your two political arrests by the Amritsar Police?
>
> Answer:   No.
>
> (2)   Have you lied about being tortured during your two arrests by the Amritsar Police, which is now under investigation?
>
> Answer:   No.
>
> (3)   Is there any part of your claim of torture while under two political arrests which is a lie?
>
> Answer:   No.

The examiner concluded he believed that Goel's answers were truthful.

Goel also submitted a medical examination report. It concluded that the scars on his body "may be consistent" with the torture Goel alleges he experienced.

The BIA denied reopening concluding that Goel could not show that either the polygraph evidence or the medical report was previously unavailable, and could not have been discovered or presented at the IJ hearing. Goel timely petitioned this court to review that denial as well as the removal order. Both petitions have been consolidated and are now before the court.

## DISCUSSION

### A. Motion To Reopen

The novel issue in this case is whether polygraph examination results qualify as evidence that was "not available" within 8 C.F.R. § 1003.2(c)(1), and thus may support a successful motion to reopen. We hold that polygraph evidence may not.

**[1]** Under 8 C.F.R. § 1003.2(c)(1), reopening is proper only where the moving party can satisfy specific criteria. It provides:

> A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing[.]

8 C.F.R. § 1003.2(c)(1).

The key question, therefore, is whether the allegedly new information was unavailable at the time of the movant's hearing. If it was available or capable of being discovered at that time, it cannot provide a basis for reopening.

In *Guzman v. INS*, 318 F.3d 911 (9th Cir. 2003) (per curium), for example, we held that the noncitizen's discovery that he mistakenly reported the wrong date of entry at his deportation hearing could not provide the basis for reopening because the allegedly "new information" about his entry date "was available and capable of discovery prior to his deportation hearing." *Guzman*, 318 F.3d at 913. By contrast, in *Bhasin v. Gonzales*, 423 F.3d 977 (9th Cir. 2005), we held that the evidence offered in support of reopening was previously unavailable because it concerned events that did not occur until after the IJ hearing. *Bhasin*, 423 F.3d at 987.

**[2]** Here, the polygraph evidence that Goel offers concerns events that allegedly occurred in India well before his IJ hearing. Goel was not in custody while awaiting his removal hearing, and was thus free to gather the evidence in support of his applications for relief. The polygraph report is evidence that could have been obtained at that time and that could have been presented at his hearing to help resolve inconsistencies in his own evidence. *See Guzman*, 318 F.3d at 913. Indeed, Goel concedes that there was no reason why he could not have secured a polygraph report between the time he was released and the time he first appeared before the IJ.

**[3]** The BIA also viewed the polygraph evidence as unreliable. Goel argues that the polygraph report constitutes stronger evidence than his documentary evidence. According to Goel, the report establishes the truth of his testimony that in turn was based on first hand knowledge. As the Supreme Court has explained, however, "there is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States v. Scheffer*, 523 U.S. 303, 309 (1998).

**[4]** Finally, even if reliable, the polygraph report could not establish prima facie eligibility for asylum. At most, the polygraph test results establish that Goel's fear of being persecuted is subjectively genuine. They do not establish or even relate to the objective reasonableness of the fear. *See Ladha v. INS*, 215 F.3d 889, 897 (9th Cir. 2000) ("To establish a well-founded fear of persecution, petitioners must show their fear to be both objectively reasonable and subjectively genuine.").

**[5]** We do not necessarily preclude the discretionary consideration of polygraph evidence by an IJ or the BIA at earlier stages of a removal proceeding. But we do hold that polygraph evidence cannot serve as the basis for reopening under 8 C.F.R. § 1003.2(c).

**[6]** Also in support of his motion to reopen, Goel submitted a medical report which explained that his scars are consistent with the torture he claims to have experienced. Because this report also concerns events that occurred well before the IJ hearing, and there is also no reason why Goel could not have obtained and presented this evidence to the IJ, this report cannot qualify as evidence that was previously unavailable either.

B.   The Credibility Determination

Goel challenges the IJ's underlying adverse credibility finding, contending it relies on minor inconsistencies that do not go to the heart of his claim for relief. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003). The inconsistencies were material because they bore on the key issue of whether he suffered past persecution. Goel's testimony was at odds with his own documentary evidence as to the nature of the persecution.

**[7]** We have held inconsistencies between testimonial and documentary evidence to be a proper basis for an adverse credibility finding. *Wang v. INS*, 352 F.3d 1250, 1258-59 (9th Cir. 2003). Whether Goel was physically beaten or whether he was fired upon, and whether he incurred actual injuries or escaped unscathed were issues crucial to the IJ's evaluation of whether Goel had experienced persecution, and whether he had any objectively reasonable fear of future persecution. The adverse credibility finding was founded upon inconsistencies that went to the heart of Goel's claim.

## CONCLUSION

**[8]** Goel provided no adequate basis for reopening and the IJ's adverse credibility finding was supported by substantial evidence.

The petitions for review are DENIED.