**Gurgen TER–GUKASYAN, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

**No. 04–74447.**

United States Court of Appeals, Ninth Circuit.

Submitted June 11, 2008.*

Filed June 16, 2008.

Alan M. Anzarouth, for Petitioner.

CAS–District Counsel, Office of the District Counsel, Department of Homeland

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a)(2).

Security, San Diego, CA, Nancy E. Friedman, Sada Manickam, Oil, DOJ–U.S. Department of Justice Civil Division/Office of Immigration Litigation, Washington, DC, Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: TROTT, HAWKINS and FISHER, Circuit Judges.

MEMORANDUM **

Gurgen Ter–Gukasyan, a native of Iran and a citizen of Armenia, seeks review of the Board of Immigration Appeals' decision affirming without opinion the Immigration Judge's ("IJ") order denying his application for asylum, withholding of removal and CAT relief. Because we conclude that the IJ's adverse credibility determination was supported by substantial evidence, we deny Ter–Gukasyan's petition for review.

Ter–Gukasyan previously applied for and was denied refugee status. In February 1994, he completed a Form I–590 citing as his reason for fleeing Armenia his home's destruction in an earthquake. "At present I live in very bad means and that is why it compels me to leave my homeland." Interviewed by a United States embassy official in March 1994, he confirmed that he "[w]ant[ed] to escape the severe economic situation" in Armenia. He said that he had never been persecuted and had no reason to believe that he would be persecuted in the future. He expressly denied ever being subject to persecution on account of his race, religion, nationality, political opinion or membership in a social group. Ter–Gukasyan acknowledged that he understood what was going on at the interview and that his refugee application and worksheet notes accurately reflect his contemporaneous denials. *Cf. Li v. Ashcroft*, 378 F.3d 959, 963 (9th Cir.2004).

■ In connection with Ter–Gukasyan's present application for asylum, he testified that he had been persecuted by the Armenian government on account of his religion, nationality and political opinion. Three of the four alleged incidents of persecution took place before his 1994 application for refugee status. Substantial evidence therefore supports the IJ's finding that there were material discrepancies between Ter–Gukasyan's 1994 statements and his testimony at the asylum merits hearing. *See Goel v. Gonzales*, 490 F.3d 735, 739 (9th Cir.2007) (per curiam) (explaining that "inconsistencies [are] material [when] they [bear] on the key issue of whether [the petitioner] suffered past persecution").

The IJ gave Ter–Gukasyan a reasonable opportunity to explain those inconsistencies. *See Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir.2007). Ter–Gukasyan said that he denied being persecuted in 1994 because that was "more convenient or practical." He testified that the embassy official had told him "[d]uring the interview" that he was "going to come" to the United States, and so he "didn't want [his] case or application to become more complicated" or risk drawing the attention of the Armenian authorities. The IJ found that this explanation was not credible and inconsistent with the relevant chronology. Ter–Gukasyan's Form I–590 was completed *before* the interview. Moreover, it was

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

not until July 1994 that he could have qualified for public interest parole. As the IJ pointed out, Ter–Gukasyan's refugee application and interview were his "opportunity to make a valid, honest claim for refugee status" and he had no reason to do "anything other than provide honest responses to these questions."

■ The IJ also rejected Ter–Gukasyan's attempt to "place the blame partially on interpreting," because there was no indication of "any concern about any language problem." This finding is also supported by substantial evidence. Ter–Gukasyan testified that his Russian was "good" enough that he told the embassy official that he "understood everything" and "didn't need" an interpreter.

**DENIED.**