**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| OSCAR OSWALDO GONZALEZ-CASTILLO, *Petitioner*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 21-70112 <br><br> Agency No. A216-429-376 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 12, 2022
San Francisco, California

Filed August 31, 2022

Before: Richard R. Clifton and Milan D. Smith, Jr., Circuit Judges, and Christina Reiss,[*] District Judge.

Opinion by Judge Clifton

---

[*] The Honorable Christina Reiss, United States District Judge for the District of Vermont, sitting by designation.

# SUMMARY[**]

## Immigration

Granting in part and dismissing in part Oscar Gonzalez-Castillo's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that: (1) substantial evidence did not support the agency's determination that Gonzalez-Castillo was ineligible for withholding of removal based on the serious nonpolitical crime bar; (2) the agency erred by failing to consider all of Gonzalez-Castillo's evidence for purposes of protection under the Convention Against Torture; and (3) Gonzalez-Castillo waived review of the agency's application of the one-year bar to asylum.

At Gonzalez-Castillo's removal proceeding, the government introduced into the record an INTERPOL Red Notice as the only evidence that Gonzalez-Castillo had committed a serious nonpolitical crime in El Salvador. The Red Notice identified Gonzalez-Castillo by name, birthdate, national identification number, and photograph, and alleged that an incident occurred on January 1, 2015, described as: "MS-13 TERRORIST, RESPONSIBLE FOR STRIKES WITHIN THE CRIMINAL ORGANIZATION, ACCORDING TO THE WITNESS IN THE PROTECTION SCHEME, CODE NAME 'SAULO' CRIMINAL CASE, 47-02-18-6." The crime classification was listed as "TERRORIST ORGANIZATIONS," and the penal legislation or disposition that sanctioned the crime was designated "Art. 13 LECAT," a law which was not in the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

record.  Gonzalez-Castillo admitted that the Red Notice identified him, but claimed that the Red Notice was fabricated because it was issued years after he left El Salvador, and he was not a member of a gang.

The panel held that, in this case, the Red Notice did not, by itself, establish probable cause that there were serious reasons to believe that Gonzalez-Castillo committed a serious nonpolitical crime in El Salvador.  Explaining that probable cause requires a "fair probability" that the noncitizen committed a serious nonpolitical crime, the panel concluded that the Red Notice in this case did not meet that standard due to errors that cast doubt on its reliability, and its failure to articulate any specific crime of which Gonzalez-Castillo was accused.  While the Red Notice here described the structure and misdeeds of MS-13 in Usulutan generally, the only allegation about Gonzalez-Castillo's involvement in the gang's activities was that, according to an anonymous witness, he was responsible for strikes within the criminal organization.  There was no further detail on what constituted a strike, and the Red Notice lacked allegations about the facts of Gonzalez-Castillo's strikes, such as the identity of any victim, or where he carried out a strike. The "penal legislation" identified by the Red Notice also was not in the record.  All the Red Notice indicated was that the crime was related to "terrorist organizations" and was punishable by up to 15 years' incarceration, but there was no information on what, exactly, constituted the elements of the crime.  Moreover, the Red Notice identified the date of the incident as January 1, 2015, but the immigration judge found that Gonzalez-Castillo had entered the United States on July 7, 2014, before the alleged crime.

Addressing the reliability of Red Notices generally, the panel wrote that it did not appear that a Red Notice alone

was ordinarily sufficient to establish probable cause that a crime had occurred.  The panel explained that because a Red Notice is not independently vetted for factual and legal justification, its reliability corresponds with that of the foreign nation's arrest warrant.  The panel also observed that the Department of Justice takes the position that a Red Notice does not meet the requirements for arrest, i.e., probable cause, under the 4th Amendment to the Constitution.  And numerous other circuits have recognized that a Red Notice alone is not enough to establish probable cause.  Agreeing with the government that a Red Notice constitutes documentary evidence like any other that an IJ should be entitled to give weight, the panel declined to adopt a per se rule that a Red Notice is never sufficient to warrant application of the bar.  However, given the nature of a Red Notice and the issues with the particular Red Notice in this case, the panel concluded that the Red Notice lacked sufficient probative value to support a probable cause finding.

The panel rejected the government's argument that by presenting "some evidence" in the form of the Red Notice, even if scant, it had shifted the burden to disprove the existence of probable cause on to Gonzalez-Castillo.  The panel explained that the regulatory burden-shifting framework could not override the statutory requirement that there be "serious reasons" to believe that the bar applies.  Rather, to apply the bar, the agency must find that there are serious reasons to believe that the petitioner committed a serious nonpolitical crime, and to do so, there must be evidence supporting a finding of probable cause.

Turning to Gonzalez-Castillo's asylum claim, the panel held that even applying the liberal construction standard for petitioners appearing pro se before the agency, Gonzalez-

Castillo never alerted the agency to the two possible grounds for excusing the filing deadline that he raised in his briefing to this court. Because Gonzalez-Castillo's brief did not challenge the agency's conclusions regarding the grounds he did raise before the agency, the panel deemed the asylum one-year bar issue waived.

As to Gonzalez-Castillo's CAT claim, the panel concluded that the agency's analysis evinced a failure to give reasoned consideration to all potentially dispositive testimony and documentary evidence related to Gonzalez-Castillo's claim of torture at the hands of El Salvadorian police and military.

The panel remanded to the agency to consider the merits of Gonzalez-Castillo's withholding claim, and for resolution of Gonzalez-Castillo's CAT claim based on a more complete review of the evidence.

---

**COUNSEL**

Amalia Wille (argued) and Judah Lakin, Attorneys; Nicole Conrad and Joya Manjur, Certified Law Students; University of California, Berkeley School of Law, Berkeley, California; for Petitioner.

Gregory D. Mack (argued), Senior Litigation Counsel; Sabatino F. Leo, Assistant Director; Brian Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

John P. Elwood, Kaitlin Konkel, and Sean A. Mirski, Arnold
& Porter Kaye Scholer LLP, Washington, D.C., for Amicus
Curiae Fair Trials Americas.

**OPINION**

CLIFTON, Circuit Judge:

Petitioner Oscar Gonzalez-Castillo was found to be
ineligible for withholding of removal by an Immigration
Judge ("IJ") because there were "serious reasons to believe
that [he] committed a serious nonpolitical crime" in his
home country of El Salvador. 8 U.S.C. § 1231(b)(3)(B)(iii).
The government only presented one piece of evidence
supporting application of the serious nonpolitical crime bar,
however. It was an INTERPOL Red Notice, described at
greater length below. The Red Notice accused Gonzalez-
Castillo of committing "strikes" on behalf of the gang MS-
13, allegedly committed on a date when Gonzalez-Castillo
was in the United States rather than in El Salvador, based on
the date of entry found by the IJ.

We conclude that substantial evidence does not support
the IJ's finding, affirmed by the Board of Immigration
Appeals ("BIA"), that Gonzalez-Castillo is ineligible for
withholding of removal based on the serious nonpolitical
crime bar. This court has long interpreted "serious reasons
to believe," the standard set by the statute for the serious
nonpolitical crime bar, as equivalent to probable cause. In
this case, the INTERPOL Red Notice cannot, by itself,
establish probable cause. The allocation of the burden of
proof in immigration proceedings does not change this
outcome. We accordingly grant Gonzalez-Castillo's petition
for review in part and remand to the agency to consider

whether Gonzalez-Castillo is eligible for withholding of removal.

We also grant the petition as to his claim under the Convention Against Torture ("CAT"), because the record reflects that the agency failed to consider all of Gonzalez-Castillo's testimony and statements about the harms he suffered in El Salvador at the hands of state actors, so we remand for more complete consideration of the CAT claim. We are not persuaded, however, by arguments in the petition for review challenging the evaluation of evidence that was discussed or by the argument that that the IJ failed sufficiently to develop the record.

We dismiss the petition in part as to his claim for asylum, because the arguments Gonzalez-Castillo raises on appeal with respect to the one-year bar for asylum relief were not exhausted before the BIA.

## I. Background

Throughout his childhood and young adulthood, Gonzalez-Castillo experienced multiple run-ins with gangs and the police in his home community in El Salvador. He testified before the IJ that in 2012, at the age of 17, he was brutally beaten by police multiple times when he was walking to school because they accused him of gang affiliation. In 2013, he was stopped while on his way to school by gang members who beat him and kidnapped him for information about a man Gonzalez-Castillo did not know. He was again beaten by MS-13 members when he refused to help them collect rent that same year. Gonzalez-Castillo denied any gang affiliation.

Gonzalez-Castillo left El Salvador in 2014[1] for the United States due to his fear of gangs. He did not apply for asylum. He testified that was because at the time he did not know English, and he was not knowledgeable about the immigration process. In February 2020, the government initiated removal proceedings against Gonzalez-Castillo. He applied for asylum, withholding, and CAT relief. Gonzalez-Castillo appeared without a lawyer and represented himself before the IJ and the BIA.

At the removal proceeding, the government introduced an INTERPOL Red Notice into the record as the only evidence that Gonzalez-Castillo had committed a serious nonpolitical crime in El Salvador. INTERPOL issues Red Notices pursuant to arrest warrants issued by member countries, but the Red Notice itself is not enough to establish probable cause in order to support an arrest in the United States. Instead, as we discuss further below, according to the Department of Justice, "the United States treats a foreign-issued Red Notice only as a formalized request by the issuing law enforcement authority to 'be on the look-out' for the fugitive in question, and to advise if they are located." About INTERPOL Washington: Frequently Asked Questions, U.S. Dep't of Justice, https://www.justice.gov/interpol-washington/frequently-asked-questions (last checked August 22, 2022).

The Red Notice introduced here identified Gonzalez-Castillo by name, birthdate, national identification number, and photograph. The section titled "Description of the incidents" reads as follows (all errors in original):

---

[1] The record contains multiple dates for Gonzalez-Castillo's entry into the U.S., but the IJ found that he arrived on July 7, 2014.

FOR SEVERAL YEARS IN THE SETTLEMENTS AND CANTONS OF THE MUNICIPALITIES OF OZATUIN, TECAPAN, OF THE DEPARTMENT OF USULUTAN, EL SALVADOR AND ITS SURROUNDINGS, THE PRESENCE OF THE MARA SALVATRUCHA MS-13 HAS BEEN ESTABLISHED THROUGH A HIERARCHICAL STRUCTURE FROM WHICH VARIOUS CLIQUES HAVE SPRUNG "WHAT IS RECOGNIZED AS A PROGRAM" AMONGST THESE [ARE] THE CLIQUE MOLINOS LOSOS SALVATRUCHOS (MLS) OF THE SHULTON PROGRAM, WHICH IS COMPOSED OF MEMBERS WHO HAVE A SPECIFIC COMMAND ROLE AND OTHER SUBORDINATES WITHIN SAID CRIMINAL STRUCTURE, WHICH 1S DEDICATED TO COMMITTJNG ALL KINDS OF ILLEGAL ACTIVITY, INCLUDING HOMICIDES OF RIVAL GANGS, ROBBERY, EXTORTION, RAPE, SALES OF DRUGS, THREATS AND OTHERS, WHO EXERCISE CRIMINAL DOMAIN IN THE SECTOR WHERE THE CRIMINAL STRUCTURE OPERATES, CAUSING FEAR AND TERROR TO CITIZENS IN GENERAL AS A RESULT, THE AFOREMENTIONED OSCAR OSWALDO GONZALEZ CASTILLO, ALIAS "El OSWALDO OR LOBO" BEING AN ACTIVE MEMBER OF SAID ORGANIZATION.

The Red Notice alleges that the "incident" occurred on January 1, 2015, in Usulutan, El Salvador. The section "Additional information about the case" says: "MS-13 TERRORIST, RESPONSIBLE FOR STRIKES WITHIN THE CRIMINAL ORGANIZATION, ACCORDING TO THE WITNESS IN THE PROTECTION SCHEME, CODE NAME 'SAULO' CRIMINAL CASE, 47-02-18-6." The "Crime classification" is listed as "TERRORIST ORGANIZATIONS," and the "penal legislation [or] disposition that sanction[s] the crime" is designated "Art. 13 LECAT," a law which is not in the record. Gonzalez-Castillo admitted that the Red Notice identified him, but he claimed that the Red Notice was fabricated because it was issued years after he left El Salvador, and he denied gang membership.

The IJ denied all relief. The IJ found Gonzalez-Castillo largely credible except that the court did not credit Gonzalez-Castillo's denials of the allegations in the Red Notice. The IJ held that Gonzalez-Castillo was ineligible for asylum because he failed to file his application within one year of arrival and he "d[id] not identify any exceptional circumstances or material changed circumstances that would excuse the late filing of his application," explaining that unfamiliarity with English and the worsening conditions in El Salvador did not suffice. The IJ also held that Gonzalez-Castillo was barred from both asylum and withholding of removal based on the serious nonpolitical crime bar, concluding that the Red Notice was sufficient evidence to support the bar. The IJ determined that this case was on all fours with the BIA's published opinion in *Matter of W-E-R-B-*, 27 I&N Dec. 795 (BIA 2020), which also applied the serious nonpolitical crime bar based on a Red Notice alone. Finally, the IJ held that Gonzalez-Castillo did not meet his burden of establishing his entitlement to CAT relief.

The BIA affirmed, citing *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994), with some added comments.**[2]**

## II. Discussion

We have jurisdiction over the petition's exhausted claims pursuant to 8 U.S.C. § 1252. "When the BIA adopts the IJ's decision with a citation to *Matter of Burbano* and also adds its own comments, as it did here, we review the decisions of both the BIA and the IJ." *Gonzaga-Ortega v. Holder*, 736 F.3d 795, 800 (9th Cir. 2013).

"We review the legal determinations of the BIA de novo and the factual determinations for substantial evidence. Substantial evidence review requires us to uphold the BIA's determination unless 'the evidence compels a contrary conclusion.'" *Villalobos Sura v. Garland*, 8 F.4th 1161, 1167 (9th Cir. 2021) (citations omitted).

### A. The Serious Nonpolitical Crime Bar to Withholding and Asylum

The BIA concluded that the serious nonpolitical crime bar prevented Gonzalez-Castillo from receiving asylum and withholding of removal based on the Red Notice. We disagree.

> The [Immigration and Nationality Act ("INA")] bars an applicant from obtaining asylum and withholding relief when "there are serious reasons" to believe that he or she

---

**[2]** Gonzalez-Castillo filed several motions with the BIA while his appeal was pending, asking for the BIA to "remand to afford him the opportunity to apply for a U visa and cancellation of removal," in addition to filing "supplemental evidence." The BIA denied all motions.

> "committed a serious nonpolitical crime" before arriving in the United States. 8 U.S.C. §§ 1158(b)(2)(A)(iii)          (asylum), 1231(b)(3)(B)(iii)     (withholding).     We interpret "'serious reasons' to believe" as being tantamount to probable cause.

*Go v. Holder*, 640 F.3d 1047, 1052 (9th Cir. 2011) (citation omitted).

We considered the significance of a Red Notice to the serious nonpolitical crime bar last year in *Villabolos Sura*, where we noted that "we have never held that a Red Notice alone is sufficient to constitute probable cause." *Villalobos Sura*, 8 F.4th at 1167. In that case, the Red Notice did not stand alone. The evidence in *Villalobos Sura* consisted of the Red Notice, an arrest warrant,[3] and the petitioner's own testimony, which, taken together, identified the petitioner and described the crime of which he was accused, including the specifics of the event and the names of the victims. *Id.* at 1168. We explained that "[t]hough this [was] far from concrete evidence of his guilt, the documents, combined with Villalobos Sura's testimony, [were] substantial evidence supporting the BIA's determination" that there was probable cause that Villalobos Sura committed the crime. *Id.*

Here, we are faced with a case in which nothing more than this Red Notice supported application of the serious nonpolitical crime bar. This Red Notice does not suffice to establish probable cause, both because of the contents of this

---

[3] Although the arrest warrant in the record was not for the underlying murder, the court concluded that "in conjunction with the Red Notice, the arrest warrant for contempt of court [was] sufficient." *Villalobos Sura*, 8 F.4th at 1168.

particular Red Notice and because of the features of Red Notices generally. The Red Notice cannot constitute substantial evidence in support of the finding that "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States." 8 U.S.C. § 1158(b)(2)(A)(iii).

The Red Notice in this case contains errors that cast doubt on its reliability, and it fails to articulate any specific crime of which Gonzalez-Castillo is accused. Probable cause requires a "fair probability" that the noncitizen committed a serious nonpolitical crime. *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1189 (9th Cir. 2016). In *Silva-Pereira*, we held that a Guatemalan indictment met that bar because "it alleges specific facts connecting [the petitioner] to the crime." *Id.* at 1188. Likewise, in *Villalobos Sura*, the evidence collectively established the specific crime (murder), the location of the murders ("several miles" from where the petitioner was stationed at the time), the names of the victims, and that the crimes were gang related. 8 F.4th at 1168. In *Go*, the noncitizen "explicitly admitted under oath to being involved in a scheme to finance 'drug transactions' while living in the Philippines," which this court held to be "sufficient to establish probable cause." 640 F.3d at 1053.

By contrast, while the Red Notice here describes the structure and misdeeds of MS-13 in Usulutan generally, the only allegation about Gonzalez-Castillo's involvement in the gang's activities is that he is "responsible for strikes within the criminal organization" according to an anonymous witness (capitalization altered). There is no further detail on what is a "strike."[4] Moreover, the Red

---

[4] Indeed, the interpreter asked during the hearing, "And Your Honor, this is the interpreter, how could I paraphrase strikes?" The court

Notice lacks allegations about the facts of Gonzalez-Castillo's "strikes," such as the identity of any victim or where he carried out a "strike." The "penal legislation" identified by the Red Notice, Art. 13 LECAT, is not in the record. All the Notice indicates is that the crime is related to "terrorist organizations" and is punishable by up to 15 years' incarceration, but there is no information on what, exactly, constitute the elements of the crime. In short, the Red Notice does not "allege[] specific facts connecting [Gonzalez-Castillo] to the crime," or, for that matter, to any concretely identifiable crime at all. *Silva-Pereira*, 827 F.3d at 1188.

Moreover, the date of the incident is identified in the Red Notice as January 1, 2015, which is after Gonzalez-Castillo had entered the U.S. Although the government argues that Gonzalez-Castillo's account of when he entered the U.S. is "unreliab[le]" because "he claimed that he entered in 2013 and 2014," the IJ found as a factual matter that Gonzalez-Castillo entered the U.S. on July 7, 2014. The government further argues that January 1, 2015 "appears simply a placeholder for a pattern of criminal activity that Petitioner participated in over a longer period of time." Even assuming such to be true, that the Red Notice itself uses a placeholder further drives home that it lacks "specific facts" tying Gonzalez-Castillo to a particular crime, *id.*, for a placeholder is, by definition, an indeterminate proxy used in lieu of a specific fact.

Unlike in *Go*, 640 F.3d at 1053, and *Villalobos Sura*, 8 F.4th at 1168, Gonzalez-Castillo has not corroborated the contents of the Red Notice with any of his testimony. *See*

responded, "You're responsible for acts within the criminal organization." "Acts" is even vaguer than "strikes." That the IJ could not more specifically articulate what a "strike" meant is telling.

*also Guan v. Barr*, 925 F.3d 1022, 1032 (9th Cir. 2019) (relying on petitioner's testimony to hold that there was probable cause). He has denied gang membership and contends that the Red Notice was falsified. Similarly, although there is no dispute that the Red Notice was generated pursuant to an arrest warrant issued by a magistrate in El Salvador, the original arrest warrant itself is not in the record. *See Villalobos Sura*, 8 F.4th at 1168. The probable cause bar "can be met without an explicit admission of guilt," *Silva-Pereira*, 827 F.3d at 1189, but the absence of any admission here, or any other corroborating evidence, leaves only the flawed Red Notice.

Turning next to issues with Red Notices generally, it does not appear to us a Red Notice alone is ordinarily sufficient to establish probable cause that a crime has occurred. "Since a Red Notice is not independently vetted for factual and legal justification, its reliability corresponds with that of the foreign nation's arrest warrant." *Villalobos Sura*, 8 F.4th at 1168 (citation omitted). The Department of Justice takes the position that a Red Notice "does not meet the requirements for arrest under the 4th Amendment to the Constitution." About INTERPOL Washington: Frequently Asked Questions, U.S. Dep't of Justice, https://www.justice.gov/interpol-washington/frequently-asked-questions (last checked August 22, 2022). That is, of course, probable cause, the standard we have defined as analogous to the "serious reason to believe" standard to support application of the serious nonpolitical crime bar.

Other circuits have recognized that a Red Notice alone is not enough to establish probable cause. *See Radiowala v. Att'y Gen. United States*, 930 F.3d 577, 580 n.1 (3d Cir. 2019) ("Congress has not seen fit to prescribe that an Interpol Red Notice alone is an independent basis for

removal. . . . Relatedly, the Department of Justice's view is that, by itself, a Red Notice is not a sufficient basis for arresting someone, for its issuance often falls short of what the Fourth Amendment requires."); *Hernandez Lara v. Barr*, 962 F.3d 45, 48 n.3 (1st Cir. 2020) ("In the United States, an INTERPOL Red Notice alone is not a sufficient basis to arrest the 'subject' of the notice 'because it does not meet the requirements for arrest under the 4th Amendment to the Constitution.'" (citation omitted)); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 24–25 (1st Cir. 2021) (same). In short, "[t]he parties did not cite, and we could not find, a case in which a court has found a Red Notice, alone, is sufficient to meet this [probable cause] standard." *Barahona v. Garland*, 993 F.3d 1024, 1028 (8th Cir. 2021).

Of course, as the government argues in its answering brief, a Red Notice "constitutes documentary evidence like any other, and an [IJ] should be entitled to give it weight." An IJ is certainly so entitled, as we held in *Villalobos Sura*. We do not adopt a per se rule that a Red Notice is never sufficient to warrant application of the bar. But given the nature of a Red Notice and the issues with this particular Red Notice, we conclude that the Red Notice in this case lacks sufficient probative value to support a probable cause finding.

The government also argues that we must affirm the BIA because of the burden-shifting framework of the INA and its implementing regulations. All the government needs to show, it contends, is "some evidence" that the serious nonpolitical crime bar *might* apply, at which point it is Gonzalez-Castillo's burden to prove "by a preponderance of the evidence that such grounds do not apply." *Matter of W-E-R-B-*, 27 I&N Dec. at 797 (citing 8 C.F.R. § 1240.8(d)). In essence, the government argues that by presenting "some

evidence" in the form of the Red Notice, even if scant, it has shifted the burden to disprove the existence of probable cause on to Gonzalez-Castillo.

The Eighth Circuit addressed, and rejected, this reasoning in *Barahona v. Garland*, in which it granted the noncitizen's petition on direct review of the published *W-E-R-B-* decision. The *Barahona* court reasoned that the statute itself, which states that there must be "serious reasons for believing" the noncitizen committed a crime, requires something more than merely "some evidence" supporting application of the bar. 993 F.3d at 1027–28. Accordingly, "[t]he BIA erred in this case when it failed to make a probable cause finding." *Id.* at 1028.

We agree with the Eighth Circuit. The burden-shifting framework of 8 C.F.R. § 1240.8(d) cannot override the statutory requirement that there be "serious reasons" to believe that the bar applies. 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii). To apply the bar, the agency must find that there are serious reasons to believe that the petitioner committed a serious nonpolitical crime, and to do so, there must be evidence supporting a finding of probable cause.

This is consistent with our decision in *Villalobos Sura*. Although we acknowledged in that case that the burden shifting framework applied, we did not suggest that the agency could find the bar applied based on only "some evidence," as *W-E-R-B-* had held. Indeed, we said, "Thus, the government need show only that there are 'serious reasons to believe' [the petitioner] committed the murders," and evaluated whether the evidence in the record sufficed to meet that bar, i.e., to "establish the requisite probable cause." *Id.* at 1167. Nothing about *Villalobos Sura* suggests that something less than probable cause can warrant application

of the bar, even if it is ultimately the petitioner's task to persuade the agency that "serious reasons" do not exist.

Substantial evidence does not support the finding that there are serious reasons to believe Gonzalez-Castillo committed a serious nonpolitical crime. We grant Gonzalez-Castillo's petition, in part, as to his application for withholding of removal.

## B.  The One-Year Bar to Asylum

The BIA also concluded that Gonzalez-Castillo was independently barred from receiving asylum relief by reason of his untimely asylum application, which was filed more than five years after he arrived, long after the one-year deadline under the INA. 8 U.S.C. § 1158(a)(2)(B).

A late asylum application may be entertained if the applicant shows "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D). The agency considered whether the reasons Gonzalez-Castillo gave to the IJ for his untimely application, his lack of English proficiency and worsening conditions in El Salvador, met this standard, concluding they did not. Before this court, Gonzalez-Castillo does not challenge those conclusions.

Instead, he argues that the IJ failed to consider two different reasons that might have excused the one-year bar: (1) the Red Notice was itself a changed circumstance and (2) the IJ failed to develop the record as to whether Gonzalez-Castillo's sexual identity might excuse the late filing. We agree with the government that both of these possible grounds for excusing the one-year deadline are waived.

Gonzalez-Castillo was pro se before the agency, which means this court must "construe [the claims] liberally." *Ren v. Holder*, 648 F.3d 1079, 1083 (9th Cir. 2011). Although exhaustion requires that the petitioner raise claims before the agency before this court may review them, "especially where the petitioner is *pro se*, general contentions can suffice as long as they put the BIA on notice of the contested issues." *Id.* (citations and quotation marks omitted). Even applying the liberal construction standard, however, Gonzalez-Castillo never alerted the agency to the two possible grounds for excusing the filing deadline that are now raised in his briefing to this court. Gonzalez-Castillo's BIA brief argued only that the conditions in El Salvador or his mental health concerns warranted application of the changed circumstances exception. It made no mention of the Red Notice or of his sexual identity (an issue which was raised elsewhere in the brief) with respect to the one-year bar.

Gonzalez-Castillo contends that simply challenging application of the one-year bar, which his BIA brief undeniably does, was enough to exhaust these arguments because "the petitioner may raise a general argument in the administrative proceeding and then raise a more specific legal issue on appeal." *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020). He particularly points to *Zhang v. Ashcroft*, 388 F.3d 713 (9th Cir. 2004) (per curiam), in support of his position. In that case, we held that mentioning CAT was enough to preserve a challenge to the denial of CAT relief. *Id.* at 721. But there, the petitioner was raising the straightforward question of whether the denial of CAT relief was erroneous based on the reasoning employed by the agency. *See id.* "[Petitioner] was challenging the IJ's Convention determination, and the agency had an opportunity to pass on this issue." *Id.*

Here, by contrast, Gonzalez-Castillo raises new grounds altogether to excuse the untimely asylum application. This is not a case in which the petitioner described the substance of the argument in his brief without using the correct legalese, which would suffice for purposes of exhaustion. *E.g.*, *Moreno-Morante v. Gonzales*, 490 F.3d 1172, 1173 n.1 (9th Cir. 2007) (issue was exhausted when the petitioner did not make "this precise statutory argument" that his grandchildren met the statutory definition of child but did generally argue that he had "a de facto parent-child relationship with his grandchildren"); *Diaz-Jimenez v. Sessions*, 902 F.3d 955, 960 (9th Cir. 2018) (issue was exhausted where the brief invoked the statutory text that furnished the argument without "mak[ing] the precise argument we now consider"). Instead, nothing in the BIA brief suggested these alternative reasons for excusing the one-year bar or afforded the agency the opportunity to "pass on [these] issue[s]" before they reached this court. *Zhang*, 388 F.3d at 721.

Gonzalez-Castillo also argues that the following language in his BIA brief exhausted the arguments he now raises: "I argue that the Immigration Judge erred in not considering the entirety and totality of my testimony, the evidence provided, all the relevant factors and all the evidence of record even if not specifically mentioned as well as the issue of judgment and decision." Pointing to "the entirety" of the testimony does not, however, "'put the BIA on notice' as to the specific issues so that the BIA has 'an opportunity to pass on those issues.'" *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008) (brackets omitted) (quoting *Zhang*, 388 F.3d at 721).

The arguments Gonzalez-Castillo now raises in support of excusing the one-year bar to asylum are waived, and we dismiss the petition in part.

## C.  Convention Against Torture

Gonzalez-Castillo also challenges the agency's denial of his torture claim. "To prevail under the CAT, an applicant must show that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Go*, 640 F.3d at 1053 (quotation marks and citation omitted). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020) (quoting 8 C.F.R. § 1208.18(a)(2)). "The applicant must also demonstrate that the torture will be inflicted by or at the instigation of or with the consent or acquiescence of a public official." *Go*, 640 F.3d at 1053 (quotation marks and citation omitted). Here, the BIA affirmed and adopted the IJ's determination that the harm Gonzalez-Castillo suffered at the hands of state actors did not rise to the level of torture, and even if his injuries by gang members did, that harm was not inflicted with the consent or acquiescence of a state actor.

We grant the petition as to CAT relief because the agency's analysis of this claim evinces a failure to give "reasoned consideration" to all "potentially dispositive testimony and documentary evidence" related to Gonzalez-Castillo's claim of torture at the hands of El Salvadorian police and military.[5] *Cole v. Holder*, 659 F.3d 762, 772 (9th

---

[5] We find no error, however, in the BIA's conclusion that the harm Gonzalez-Castillo suffered by gang violence, if it did rise to the level of

Cir. 2011). Although we do not require the agency to "discuss each piece of evidence submitted," here, the agency's analysis of the evidence indicates "that something is amiss" for two reasons. *Martinez v. Clark*, 36 F.4th 1219, 1231 (9th Cir. 2022) (citation omitted).

First, the agency "misstat[ed] the record," *id.* (citation omitted), when it concluded that Gonzalez-Castillo was "never arrested or detained." This finding conflicts with Gonzalez-Castillo's testimony, which the IJ found credible. Gonzalez-Castillo testified at the hearing before the IJ that "the detectives and the police, they would detain me," and he stated in his written account that the police took him into

---

torture, was not done with the acquiescence of a public official. The IJ asked Gonzalez-Castillo if he had reported the gang violence "to the police or any authorities." He responded that he had not "because we live at the edge of a volcano and it's very difficult for us to go to the city to report any kind of crime. And also, because of fear about the gangs that if they find out that we go and report, that they would kill my family." At most, the evidence shows "a general ineffectiveness on the government's part to investigate and prevent crime," which "will not suffice to show acquiescence." *Xochihua-Jaimes*, 962 F.3d at 1184 (citation omitted).

Finally, Gonzalez-Castillo argues that the IJ failed to consider his increased risk of torture based on the Red Notice, which identifies him as a gang member, his status as a deportee, and his sexual identity. The brief points to the documentary country conditions evidence in support of these arguments. While "country conditions alone can play a decisive role in granting relief under the Convention," the record evidence here "does not meet the high threshold of establishing that it is more likely than not that [the petitioner] will be tortured by or with the consent or acquiescence of a public official." *Mukulumbutu v. Barr*, 977 F.3d 924, 927 (9th Cir. 2020) (citation omitted). Nor does the IJ's decision suggest he failed to consider this evidence. The decision explicitly addressed the relevant evidence of violence and concluded that it "does not on its own compel a finding that such harm is more likely than not to occur in the Respondent's specific case."

custody, beat him, and threatened to kill him. *See Arrey v. Barr*, 916 F.3d 1149, 1161 (9th Cir. 2019) (remanding to the agency where unrebutted, credible testimony ran counter to the agency's factual finding).

Second, the agency "fail[ed] to mention highly probative or potentially dispositive evidence" about the severity of the mistreatment, and the seriousness of the injuries, Gonzalez-Castillo suffered. *Martinez*, 36 F.4th at 1231 (citation omitted). The IJ concluded, and the BIA affirmed, that Gonzalez-Castillo was subject to "inhumane treatment" because "he was regularly beaten by the military on his way to school, and that as a result, he suffered bruises and inflammation." And the IJ stated, "The police also interrogated the Respondent in connection with a gang murder the Respondent had witnessed. He explained that the police were aggressive and threatened him during the interrogation." But Gonzalez-Castillo's written statement documented considerably more serious harm. He said that officers would "take [Gonzalez-Castillo] into custody, cover their faces and torture [him] and ask [him] to give names and the amount of members involved in 'MS-13.'" He also wrote that police held him at gunpoint and threatened to turn him in to an organized crime death squad. And Gonzalez-Castillo claimed that officials also would "raid [his] house at odd hours of the night" and "aggressively hit [him] with their [r]ifles, which left a scar on the left side of [his] face."

Past torture is a principal factor in deciding the likelihood of future torture. *Nuru v. Gonzales*, 404 F.3d 1207, 1218 (9th Cir. 2005). But in concluding there was no past torture here, the agency "mischaracterized the record," and accordingly, "it failed to give reasoned consideration to the potentially dispositive testimony . . . . We must therefore remand for the agency to reconsider [the] CAT claim in light

of [that evidence.]" *Cole*, 659 F.3d at 773. Accordingly, we grant the petition as to CAT relief and remand to the agency for further proceedings.

### D. The IJ's Duty to Develop the Record

Gonzalez-Castillo contends that the agency failed to adequately develop the record.[6] "[W]hen the alien appears pro se, it is the IJ's duty to fully develop the record." *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (quotation marks and citation omitted). This means that "the IJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Zamorano v. Garland*, 2 F.4th 1213, 1226 (9th Cir. 2021) (quotation marks and citation omitted).

In *Jacinto v. INS*, 208 F.3d 725 (9th Cir. 2000), for instance, we held that the petitioner was denied a full and fair adjudication when the IJ's questioning appeared hostile and did not allow the petitioner to "present her own [] narrated statement that might have added support to her claim." *Id.* at 734.

In *Zamorano*, by contrast, we held that the IJ made no error where "the IJ asked pertinent questions directed to determining whether [the petitioner] was eligible for [] relief based on a fear of persecution upon return to Mexico." 2 F.4th at 1226. The petitioner's answers gave the IJ

---

[6] The government contends Gonzalez-Castillo also waived this argument by failing to raise it before the BIA. Construing his filings liberally, the BIA was sufficiently on notice of the argument that the IJ failed to consider all relevant evidence, and we have jurisdiction to consider its merits. *Ren*, 648 F.3d at 1083–84.

"nothing left ... to do, because [the petitioner's] own testimony established there was no basis for [relief]." *Id.*

Gonzalez-Castillo points to three areas of testimony that the IJ allegedly failed to probe: first, "the nature of his physical injuries inflicted by Salvadoran military and police," second, the mental harm he suffered, and third, "the government's acquiescence in gang violence."[7] Our review of the record confirms that the IJ's questioning gave Gonzalez-Castillo sufficient opportunities to address these issues. First, the IJ asked "what injury did you suffer" during his encounters with the military and whether he sought medical care for those injuries. The IJ also asked whether Gonzalez-Castillo reported his encounters with gangs to the police. Gonzalez-Castillo could have answered that doing so would have been fruitless, as he now argues, but he answered instead that he lived too far from the city and feared gang retaliation. And at the end of the hearing, the IJ gave him the opportunity to "tell [the IJ] anything more you would like [the IJ] to know that perhaps was not asked of you."

The IJ asked "pertinent questions directed to determining whether [the petitioner] was eligible for [] relief." *Zamorano*, 2 F.4th at 1226. The IJ also gave Gonzalez-Castillo the opportunity to provide, in his own words, any further information. *See Jacinto*, 208 F.3d at 734. An IJ's duties to develop the record do not "detract from the alien's statutory burden of proof" or "transform IJs into attorneys for aliens appearing pro se." *Zamorano*, 2 F.4th at 1226

---

[7] Gonzalez-Castillo also suggests that the IJ should have developed the record further with respect to other possible bases for excusal of the one-year bar. When the IJ asked Gonzalez-Castillo to speak to his failure to apply for asylum when he first arrived in the U.S., he did not mention any of those additional reasons.

(citation omitted). The IJ sufficiently developed the record here.

## III.     Conclusion

For the foregoing reasons, the petition is dismissed in part, as to asylum, because Gonzalez-Castillo's arguments as to the one-year bar are waived.

The BIA's conclusion that there are serious reasons to believe that Gonzalez-Castillo committed a serious nonpolitical crime is not supported by substantial evidence, however. The petition for review is granted in part, and this matter is remanded to the agency to consider the merits of Gonzalez-Castillo's withholding claim. The petition is also granted in part as to the claim for relief under CAT, and we remand to the BIA for resolution of that claim based on a more complete review of the evidence.

**PETITION GRANTED IN PART, DISMISSED IN PART;      REMANDED      FOR      FURTHER PROCEEDINGS.[8]**

---

[8] Costs are taxed against the government.