NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 10 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MAHMOUD JAD ALLAH MOHAMMAD ALBADARNEH,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General,<br><br>Respondent. | No. 23-264<br><br>Agency No.<br>A240-851-130<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 6, 2025
San Francisco, California

Before: FORREST and SANCHEZ, Circuit Judges, and EZRA, District Judge.**
Dissent by Judge SANCHEZ.

Petitioner Mahmoud Jad Allah Mohammad Albadarneh appeals the Board of

Immigration Appeals' (BIA) decision affirming the denial of his application for

asylum, withholding of removal, and protection under the Convention Against

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

Torture (CAT). Albadarneh fears being subjected to an "honor killing" because he was caught sitting with and speaking to an unmarried girl named Dina Khloof outside their village in Jordan. Albadarneh asserts that Khloof's family physically assaulted and threatened him and his family members, kicked his family out of their village, and sentenced him and Khloof to death. Albadarneh further asserts that Khloof was "honor-killed." The agency denied Albadarneh relief because it found Albadarneh was not credible and because he failed to prove eligibility for any relief. We have jurisdiction under 8 U.S.C. § 1252, and we dismiss in part and deny in part the petition.

"Where, as here, the BIA summarily adopts the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), we 'review the IJ's decision as if it were the BIA's decision.'" *Antonio v. Garland*, 58 F.4th 1067, 1072 (9th Cir. 2023) (quoting *Ren v. Holder*, 648 F.3d 1079, 1083 (9th Cir. 2011)). We review the IJ's factual findings for substantial evidence. *Ren*, 648 F.3d at 1083. "Under this highly deferential standard, we must accept administrative findings as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Antonio*, 58 F.4th at 1072–73 (internal quotation marks and citation omitted).

1.     ***Exhaustion.*** On appeal to this court, Albadarneh argues that the agency violated his due process rights because his merits hearing was not translated properly, which contributed to the IJ denying him relief. He further argues that, as a

pro se litigant, he exhausted this challenge before the BIA. "[F]ailure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter." *Arsdi v. Holder*, 659 F.3d 925, 928–29 (9th Cir. 2011) (internal quotation marks and citation omitted). An applicant for immigration relief "need not use precise legal terminology" or "provide a well developed argument to support his claim, but he *must* put the issue . . . before the BIA such that it had the opportunity to correct [the] error." *Id.* at 929 (internal quotation marks and citation omitted). We construe filings submitted by pro se applicants liberally, but even in this context "general contentions" are only sufficient where "they put the BIA on notice of the contested issues." *Gonzalez-Castillo v. Garland*, 47 F.4th 971, 980 (9th Cir. 2022) (internal quotation marks and citation omitted).

Here, Albadarneh's Notice of Appeal to the BIA asserted that (1) the IJ erred by not accepting his explanations about inconsistencies in his statements, and (2) inconsistencies between his application for relief and his hearing testimony were due to mistakes made by the translator who helped him prepare his application. However, the Notice of Appeal made no reference to translation problems at his hearing. Similarly, Albadarneh's brief filed with the BIA argued that the IJ erred by (1) denying him the "right to clarify [his] answers" at the hearing, (2) failing to accept his testimony that honor killings happen to both men and women, (3) refusing to let

him correct translation errors in his application and to listen when he tried to explain the translator's mistakes, and (4) rejecting a supporting letter from his brother because it was undated and presented in English rather than Arabic. Amid these particularized challenges, Albadarneh's brief again did not mention the translation at his hearing, which was performed by a different interpreter. Even construing his filings liberally, we cannot conclude that Albadarneh "put the BIA on notice" that he was challenging *the translation* of his hearing where the focus of his arguments were mistakes made in his application and the IJ's *refusal to listen to his explanations* about his inconsistencies—not that the IJ did not understand his explanations or that Albadarneh did not understand the IJ's questions. *Id.*

As in *Gonzalez-Castillo*, "[t]his is not a case in which the petitioner described the substance of the argument in his brief without using the correct legalese." *Id.* The dissent is correct that Albadarneh was not required to raise his challenge "in a precise form during the administrative proceeding." *Bare v. Barr*, 975 F.3d 952, 960 (2020) (citing *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008)). But he *was* required to raise to the agency the challenge that he now asserts on appeal in a manner that would give the agency notice and "the opportunity to pass on [the issue] before [it] reached this court." *Gonzalez-Castillo*, 47 F.4th at 981. As in *Gonzalez-Castillo*, given the nature of the issue, this requirement was not met where Albadarneh merely raised "the general issue of translation" without indicating he

had a problem with the interpreter who assisted with his removal hearing, particularly where he had argued specifically that there were translation problems earlier when he prepared his application for relief. Dissent at 2. Thus, we dismiss Albadarneh's due process challenge for lack of jurisdiction.

## 2. *Adverse Credibility*

Albadarneh also argues that substantial evidence does not support the IJ's adverse-credibility determination. An asylum applicant's testimony alone may suffice to sustain his burden of proof, "but only if the applicant satisfies the trier of fact that [his] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); *see, e.g.*, *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016). The IJ must consider the "totality of the circumstances" when determining credibility. 8 U.S.C. § 1158(b)(1)(B)(iii). Specifically, "[i]nconsistencies between testimonial and documentary evidence [are] a proper basis for an adverse credibility finding." *Goel v. Gonzales*, 490 F.3d 735, 739 (9th Cir. 2007) (per curiam).

Here, the IJ based its adverse-credibility finding on "several important inconsistencies between [Albadarneh]'s testimony and his application," as well as his non-responsiveness at the hearing. The IJ specifically noted that Albadarneh's application states that "the content[] of the application was read to [Albadarneh] in his native language." Albadarneh's challenge to the agency's adverse-credibility

finding fails because it hinges on his improper-hearing-translation argument. He does not otherwise explain his inconsistences concerning (1) the nature of his relationship with Khloof; (2) whether he was beaten three times by Khloof's brother; (3) whether the Khloof family visited his family's home, assaulted his family members, and caused his mother to be hospitalized; (4) the circumstances of his brother's letter; and (5) the timing of when he learned of his mother's hospitalization. These inconsistences are material because they directly relate to the alleged motivation Khloof's family had for persecuting Albadarneh and the degree of harm that he and his family members suffered. We are not compelled to reach a contrary conclusion than that reached by the agency.

Because we conclude that the agency did not err in finding Albadarneh not credible, which undermines Albadarneh's ability to prove that he suffered past persecution or is likely to suffer future persecution if removed to Jordan, we do not address the remaining issues related to his eligibility for asylum or withholding of removal. *See Corpeno-Romero v. Garland*, 120 F.4th 570, 577 (9th Cir. 2024); *Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1230 (9th Cir. 2016). Finally, Albadarneh does not challenge, and therefore forfeits, any objection to the agency's denial of CAT protection. *See, e.g.*, *Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013).

**PETITION DISMISSED IN PART; DENIED IN PART.**

23-264



*Mahmoud Jad Allah Mohammad Albadarneh v. Pamela Bondi*, No. 23-264

SANCHEZ, Circuit Judge, dissenting:

I respectfully dissent. This court's exhaustion standard does not require a petitioner to raise an issue "in a precise form during the administrative proceeding." *Bare v. Barr*, 975 F.3d 952, 960 (citing *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008)). Rather, a petitioner may "raise a general argument in the administrative proceeding and then raise a more specific legal issue on appeal." *Id*. (citing *Moreno-Morante v. Gozales*, 490 F.3d 1172, 1173 n.1 (9th Cir. 2007)). When a petitioner is pro se, we must construe their claims liberally for purposes of exhaustion, *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002), and even inartful arguments are adequately exhausted if they suffice to give notice to the Board of Immigration Appeals ("BIA") of the petitioner's reasons for appeal. *See Nolasco-Amaya v. Garland*, 14 F.4th 1007, 1014 (9th Cir. 2021). What matters ultimately "is that the BIA was sufficiently on notice so that it had an opportunity to pass on this issue." *Bare*, 975 F.3d at 960 (internal citation omitted).

Under our liberal exhaustion standards, Mahmoud Albadarneh sufficiently exhausted his due process challenge for incompetent translation services at his removal hearing. In his pro se brief before the BIA, Albadarneh stated that he was unable to make himself understood at his removal hearing. He complained

1

repeatedly that the IJ "would not listen" to Albadarneh's answers and told him that he "was not allowed" to make corrections to his asylum application or explain why his oral testimony differed from his application. Albadarneh argued that his inability to speak English prevented him from being able to verify that his asylum application reflected his understanding of prior events. In short, Albadarneh's pro se brief to the BIA plainly raised the general issue of translation and communication errors, even as he did not make the specific argument that the interpreter at his removal hearing was ineffective. In my view, these arguments were sufficient to put the BIA on notice that incompetent translation services undermined the fundamental fairness of his removal hearing, an issue the BIA should have identified under its independent review of the record. *See Abebe v. Gonzalez*, 432 F.3d 1037, 1040 (9th Cir. 2005) (explaining that a summary affirmance "signif[ies] that [the BIA] ha[s] conducted an independent review of the record and ha[s] exercised its own discretion in determining that its conclusions were the same as those articulated by the IJ").

We have identified three types of evidence "which tend to prove that a translation was incompetent": (1) "direct evidence of incorrectly translated words," (2) "unresponsive answers by the witness," and (3) "the witness's expression of difficulty understanding what is said to him." *Perez-Lastor v. INS*, 208 F.3d 773,

2

778 (9th Cir. 2000). A review of the hearing transcript shows evidence of all three kinds of translation errors.

There was direct evidence that the interpreter mistranslated terms such as "girlfriend" and "romantic relationship," leading Albadarneh to testify on cross-examination that he was *not* in a romantic relationship with Dina Khloof because he believed that meant they were having sex. This contradicted Albadarneh's earlier testimony that he and Khloof were "friends" who "wanted to get married," after she "finish[ed] her studies first," as well as his asylum application describing Khloof as his "girlfriend" and that they were in a "romantic relationship." Clearly something was lost in translation when Albadarneh testified in response to the Government's questions: "I am not denying because this is the truth. That's what I said that she was my friend and that we wanted to get married. That's not a romantic relationship and things like that."

There were also numerous examples of Albadarneh's non-comprehension and unresponsive answers to simple questions—hallmarks of ineffective translation. *Perez-Lastor,* 208 F.3d at 778. For example, the IJ asked: "Where are [your sisters]?" Albadarneh answered: "About five married and one not married." When the IJ inquired about an attack on Albadarneh's family home, the IJ asked: "Did the house get hit by any bullets that you know of?" Albadarneh stated, "I don't understand." The IJ repeated, "Did any of the bullets hit your house, sir?"

3

Albadarneh answered: "I haven't seen anything. When they started shooting and yelling, 'Come out Mahmoud,' I was sure this is her family, and I ran away." There were several such instances in which Albadarneh stated that he did not understand the question.

Notably, the Government does not address Albadarneh's arguments that the translator was incompetent or that he was prejudiced by it, instead faulting Albadarneh for his failure to mention any removal hearing translation problems in his brief to the BIA. But this court's precedents do not require a pro se, non-English-speaking petitioner to state a due process challenge in such specific terms.

In *Agyeman*, we concluded that the pro se petitioner adequately exhausted a due process claim when his notice of appeal challenged the IJ's insistence that his wife appear at his hearing to testify about their marriage, despite her ongoing treatment for a severe mental health disorder. *See* 296 F.3d at 878. Although Agyeman did not argue that his due process rights were violated or that evidence of his bona fide marriage could be established in different ways, we held that his general argument was sufficient to alert the BIA to a due process violation— conditioning relief on his wife's appearance. *Id.*; *see also Dent v. Holder*, 627 F.3d 365, 372–74 (9th Cir. 2020) (finding due process claim exhausted based on petitioner's contention that the agency failed to furnish records related to his mother's citizenship).

4

As a non-English speaking, pro se petitioner, Albadarneh could not be expected to identify a specific legal theory underlying his claim or recognize the full extent of the ineffective translation services at his removal hearing, even with the benefit of an English transcript. However, Albadarneh could do what he did here: describe the translation and miscommunication issues underlying these removal proceedings to explain why he was not given an opportunity to clarify any purported inconsistencies in his testimony and asylum application. Our precedents require nothing more from a pro se petitioner to exhaust a due process claim sufficiently for this court to adjudicate it on the merits. Accordingly, I would vacate and remand for the BIA to conduct a new hearing with a competent translator.[1]

---

[1] The Government does not contest that Albadarneh suffered prejudice because of the translation errors at his removal hearing, for good reason. The IJ based its adverse credibility determination on perceived inconsistencies in the same portions of Albadarneh's testimony where he suffered from clearly incompetent translation, such as Albadarneh's testimony about his relationship with Ms. Khloof. *See Perez-Lastor*, 208 F.3d at 780 (stating that a petitioner "suffers prejudice if the violation '*potentially* . . . affect[s] the outcome of the proceedings'" (quoting *Hartooni v. INS*, 21 F.3d 336, 340 (9th Cir. 1994))).